85    175
h92  ² 19

## The Chicago, R. I. & P. Ry. Co. v. Phil. E. Downey, Adm.

1. JURORS—*Parties to Suits Pending for Trial—Challenge.*—In the challenge of a juror on the ground that he was a party to a suit pending for trial at the time, it is not for the court to say whether the cause is pending for trial or not. The mere fact that it is not on the trial list is not conclusive. A case may be put on the trial list at any time by agreement and stand ready for trial.

2. ORDINARY CARE—*Habits of Care of Deceased Persons.*—Where there are no witnesses to an accident whose testimony can throw light upon the question as to whether or not the deceased was exercising due care for his own safety at the time of the accident, evidence of the habits of care of the deceased is competent.

3. JURY—*Polling.*—The court ordered the jury to be polled; the clerk called the names of eleven only of the jurors, and each was asked, " Was and is this your verdict?" and each of the eleven answered " Yes." And thereupon the court said to the jury, " You are discharged from further consideration of this cause and for the term." Before any of them had left the jury box, the clerk discovered that one juror had not been polled or interrogated as to the verdict. Counsel for the defendant had not noticed the omission and thus far made no objection; but when the court's attention was called to the fact it

ordered that the juror be polled, and against appellant's objection it was done, and being asked the question, " Was and is this your verdict?" the juror answered " Yes," and the jury was then discharged. *Held*, no error.

**Action in Case.**—Death from negligent act. Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the May term. 1899. Reversed and remanded. Opinion filed October 12, 1899.

HENRY CURTIS and W. T. RANKIN, attorneys for appellant; ROBERT MATHER, of counsel.

LOONEY & KELLY and J. T. KENWORTHY, attorneys for appellee.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of the court.

Thomas Hillings, plaintiff's intestate, was killed at Sheffield, Illinois, in January or February, 1897, the precise date not being definitely fixed by the evidence. He was run over by one of appellant's engines which was switching in the company's yards at Sheffield. This action was brought to recover damages alleged to have resulted to his next of kin by reason of his death. The case was tried by a jury who found a verdict in favor of appellee for $2,800. A motion for new trial was overruled and judgment entered on the verdict. Appellant prosecutes this appeal, and assigns for error the admission of improper evidence, exclusion of proper evidence, the giving of improper instructions and the refusal of proper instructions; overruling the defendant's motion to exclude the evidence and direct a verdict in its favor; allowing a juror to be polled after the jury had been discharged; refusing to allow defendant's challenge to the juror Jacob Larue; that the verdict is contrary to the law and the evidence; and the court erred in overruling the motion for new trial and entering judgment on the verdict.

The declaration contained five counts, and the charges of negligence therein contained were, that the engine which

killed Hillings was backed over the public crossing in Sheffield at a high and dangerous rate of speed, without any light on the rear of the engine or tender, and without giving any warning or signal, striking decedent while he was upon said crossing and in the exercise of due care on his part; starting the engine without ringing the bell or sounding the whistle a reasonable time before starting; running the engine at a speed of fifteen miles an hour in violation of an ordinance of the village of Sheffield, which limited the rate of speed to ten miles an hour; and that the engine was run between the water tank and Sheffield without the bell being rung, in violation of an ordinance of Sheffield which required bells on engines to be rung continuously while running through the corporate limits of the village.

The facts of the case as we gather them from the evidence are, that the deceased was a man about sixty years old, who had been for some years night watchman of the village of Sheffield, and it was his custom to meet incoming trains and escort passengers to the hotel or to their homes. On the night he was killed one of appellant's freight trains had arrived from the west and was left standing west of the village, near some coal chutes, while the engine was engaged in switching, after which the engine was taken to a water crane a short distance east of the railway station, where it took water.  Appellant's railway at this point runs nearly east and west.  Between the station and the water crane there was a crossing over the railway which formed the extension of Main street in the village.  Whether this was a public crossing or not seems to be a matter of dispute, but we think the evidence shows it was at least recognized by appellant as a crossing over which the public had a right to pass.  On the west side of this crossing or road was a plank sidewalk, running as far as the tracks, the center of the sidewalk being a little over fifty-four feet from the water crane.  While the fireman was taking water, he carried a lantern containing a white light, and the engineer was oiling his engine.  After taking water the fireman

hung his lantern on a nail in the rear of the projecting roof of
the cab and called "All right" to the engineer, who proceeded
to mount the engine and take his place in the cab. About
this time a west bound passenger train arrived at the station
and after discharging its passengers proceeded on its way.
A moment or two after the passenger train departed the
engineer of the freight train started to back his engine
toward the coal chutes west of the station. There is the
usual contradiction in the evidence as to whether the bell
was rung or not, and also as to the speed of the engine.
Appellant's contention, supported by positive testimony of
some of its witnesses, is that the engine was equipped with
an automatic air bell ringer which was put in operation
before the engine was started, and that the bell continued
to ring while the engine was passing over the crossing;
also that when deceased was struck the engine was not
moving at a speed exceeding four miles an hour. As these
are questions to be determined by the jury upon another
trial we forbear commenting upon the conflicting evidence
on these points. Harvey Squires and William Humphrey,
who were witnesses in the case, had arrived on the pas-
senger train and alighted on the north platform of the sta-
tion, near the center of the passenger depot. They did not
see deceased about the platform or station. These witnesses
proceeded east on the platform, intending to pass over the
tracks on the plank sidewalk running south toward the
town. While still on the platform they observed the engine
standing at the water crane, and when they reached the
crossing the engine was just passing over, and they waited
for it to go by, so they could cross, and after it had passed
them they saw something fall from the rear of the tender,
heard a groan, and on going to the spot they found the
body of Thomas Hillings, so badly injured that he died a
short time thereafter. The spot where he fell was about
twenty-eight feet from the west line of the sidewalk on
which Squires and Humphrey had been standing, and was
marked by a pool of blood. The cane, which deceased was
carrying, was found a short distance east of the point where

the body was found, but this was not discovered until after daylight in the morning.   Where the deceased came from, or which way he was going, is not shown by the evidence, and can only be matter of conjecture.   No witness testifies to seeing him about the station that morning and the witnesses Squires and Humphrey did not see him at the crossing, nor until he was struck by the engine outside of the street lines.   It was a very cold morning, and the evidence shows deceased had on a heavy plush cap which could be turned down over the ears, and it was in fact so turned down when he was found after being struck.   He had been for years familiar with the station, the crossing in question, the movements of trains and engines in the station grounds, and in some respects the accident seems hard to be accounted for, because no reason is perceived why deceased could not have seen the engine as well as Squires and Humphrey, had he been at all observant for his own safety.

While the jury were being impaneled it appeared from the examination of Jacob Larue, that he was a party to a suit then pending in the Circuit Court in which the case at bar was being tried.   He was challenged for cause because he was a party to such pending suit, but the challenge was refused, the court remarking :

" It is not on the calendar for trial.   It is not on my list for trial.   I take it that the clause ' pending for trial,' means that the case is ready to be tried.   The challenge for cause will be denied."

We think the challenge should have been sustained.   It is not for the court to say whether the cause was " pending for trial " or not.   The mere fact it was not on the trial list was not conclusive.   For anything that appears in the record, the case might have been put on the trial list at any time by agreement, and the cause stand ready for trial. Counsel for appellee argues that it does not appear from the record that appellant exhausted its peremptory challenges and therefore was not harmed by this ruling of the court.   But the record shows that appellant peremptorily challenged the jurors Fones, Schmidt and Larue. This was all the peremptory challenges it was entitled to under the

statute, hence its right to challenge peremptorily was exhausted. We think the better opinion is, it was not bound to challenge another juror whom it might be compelled to take, and thus possibly incur his prejudice, in order to properly save the question as to the propriety of the court's action in overruling the challenge. It appears from the affidavit of Henry Curtis, of counsel for appellant, filed in support of the motion for a new trial, and which is incorporated into the bill of exceptions and thus made a part of the record, the appellant desired to challenge other jurors but could not do so for the reason its peremptory challenges were exhausted on the jurors Fones, Schmidt and Larue. It further appears from the same affidavit, that under the rules and practice of the court, causes could be placed upon the trial list at any time by agreement of the parties, and cases had been so added to the trial list at that very term of court, and that no order of continuance had been entered in the Larue case. Under all the circumstances we think it was error for the court to refuse the challenge. It is argued by counsel for appellee that there was in fact no challenge, but it is evident from the language used by the trial judge that he understood that appellant's counsel challenged juror Larue for cause. During the trial a witness was asked what he knew about the defendant company giving signals when approaching the crossing in question, in the way of ringing a bell or blowing a whistle prior to the accident to appellee's intestate.

The question was objected to by appellant, but the witness was permitted to answer and appellant excepted. This ruling of the court is assigned for error. If this evidence was competent at all it could only have been for the purpose of showing that the railroad company recognized the crossing in question as a public crossing. We think it was error to receive this evidence without in some way limiting its effect to the only legitimate purpose for which it could have been admitted. There was a controversy as to whether the bell was rung at the time the deceased was killed. There was evidence that at previous times appellant's engines had

Chicago, R. I. & P. Ry. Co. v. Downey.

passed over the crossing without ringing the bell. The jury might well suppose if that had been so on former occasions it might also have been true on the night of the accident. The evidence could not fail of being highly prejudicial to appellant. To say the very least, the case was extremely doubtful on the facts, and it was of the highest importance no improper evidence should be permitted to go to the jury.

It is assigned for error that the court admitted evidence, over appellant's objection, as to the habits of care of the deceased, it being claimed by appellant that there were eye-witnesses to the accident. We are of the opinion this point is not well taken. It can not properly be said there were eye-witnesses to the accident. True, Squires and Humphrey saw the deceased fall at the time the tender struck him, but they had not seen him before and did not know he was there, and their testimony could shed no light whatever upon the question as to whether or not deceased was exercising due care for his own safety prior to and at the time he was struck, other than may be drawn as inferences from the circumstances. Hence we think it was not error to admit the evidence.

When the jury returned their verdict into court and it had been read, appellant's counsel asked that the jury be polled; the request was granted and the polling of the jury was ordered. The clerk called the names of eleven only of the jurors, and each was asked, " Was and is this your verdict ? " and each of the eleven answered " Yes." And thereupon the court said to the jury, " You are discharged from further consideration of this cause and for the term." Some of the jurors arose to depart, but before any of them had left the jury box, the clerk discovered that one juror, John Evans, had not been polled or interrogated as to the verdict. Appellant's counsel had not noticed the omission and thus far made no objection, but when the court's attention was called to the facts, it ordered that John Evans be polled, and against appellant's objection it was done, and being asked the question " Was and is this your verdict ? "

juror Evans answered "Yes" and the jury were then discharged.

It is insisted that this was error and that the jury was not legally polled. We think there was no error in this action of the court. Although the jurors were told they were discharged, they were still in the jury box and within the control of the court. They had not separated, and no reason is perceived why the omission could not properly be cured in the manner it was. Appellant's counsel made no objection to the polling of the eleven jurors, and but for the discovery by the clerk of the omission to call juror Evans the record would have shown the jury properly polled, and then after the jury had been discharged it would no doubt have been too late to raise the objection. We think the point is without substantial merit and must be decided against appellant.

Error is assigned upon the action of the court in giving, refusing and modifying instructions, but as no mention is made of these assignments of error in the argument, they must be regarded as waived, and we need not consider them; but for the errors indicated the judgment is reversed and the cause remanded.