DURHAM *v.* STATE.

(*Nashville*, December Term, 1944.)

Opinion filed June 9, 1945.

578

J. T. DURHAM, LUTHER CREASY, and J. W. MURREY, all of Gallatin, and HILLDROP & MAYFIELD, of Nashville, for plaintiff in error, defendant below.

ERNEST F. SMITH, Assistant Attorney General, for the State.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This appeal is from a conviction of rape with a prison sentence of twenty years. Durham was eighteen years of age, resided with his parents in Gallatin and held a position of trust with the Railway Express. His previous record is clear.

The young woman is of the same age, was employed as a waitress in a Gallatin cafe and her reputation was good. She testified she left the cafe about 10:15 p. m. January 14, 1944, and while walking to her rooming house, a short distance away, at a point within one block of the police station, a young man, with whom she was not acquainted, whose name she did not know, but she said she had seen before, sitting in a black Ford pick up truck at the curb, invited her to enter and ride to her room, which she did, after some hestitation; that he then suggested they go for a soft drink and they went first to one place and then to another where she was served with ice cream and he a soft drink; that he then drove her out a highway to a crossroad intersection where he turned in and then forcibly violated her; that they returned to town where she escaped from the truck and related her story to police officers and gave them a description of her assailant. (It should be here mentioned that the account given by the young woman on the stand of her entering the truck differed radically from that given by her to the officers, in this, that she told the officers she was seized and forced into the truck by the defendant, who then drove directly out into the country with her.) It was then 11:00 p. m. After some inquiry and delay the officers went to the Durham home where they found the defendant in bed. He was identified by the young woman and arrested. He had visited that evening a Miss Dodds, a young Gallatin woman of good standing, (to whom he was later married) and had left

her home in a green Chevrolet truck about 10:15. He says he stopped a few minutes en route to get a sandwich and reached home at 10:30 and produces witnesses who so attest.

The defendant denies participation in or knowledge of the offense and says he never saw the young woman who accuses him before. He relies on an alibi, his established good character, contradictions and inconsistencies in the State's proof of identification of himself and the truck, and improbabilities in the proven time element.

A number of errors have been assigned directed to the evidence of identification particularly, the admission of testimony, inadequacy of the charge, passion and prejudice, and challenging the competency of jurors on the ground of partiality and bias—sitting in violation of the constitutional right of the accused to a fair trial by an impartial jury.

In view of the disposition which, as will be seen, we have found it necessary to make of this appeal, we shall not discuss in further detail the evidence, or announce any conclusion with respect thereto. The outline above given will suffice to show the gravity of the case and that the vital issue of identification is at least not free from doubt. Passing by other questions we consider the challenges to the competency of certain jurors.

██ On the motion for a new trial the fitness of two jurors was challenged, one, Walter Riggsbee for mental competency. It was shown and apparently conceded that he had been at one time adjudged insane, had been confined in a state institution for the insane, and his adjudged disability had never been removed. However, it was shown, without contradiction, that he had been out of the asylum for a number of years, was quite apparently restored to normalcy, had engaged in business pursuits

and enjoyed the confidence of those who knew him. This was attested by his physician, banker and others. There is no charge or showing that he was not an impartial juror. This challenge came too late. Objections based on general disqualifications, such as age, residence, relationship, feeble mindedness and the like are of the *propter defectum* class, to which the rule applies that the challenge shall be made before verdict. This is the general rule and has been declared in numerous of our cases, among these being *Walker* v. *State,* 118 Tenn. 375, 99 S. W. 366; *Monday* v. *State,* 160 Tenn. 258, 23 S. W. (2d) 656; *Hamilton* v. *State,* 101 Tenn. 417, 47 S. W. 695; *Cartwright* v. *State,* 80 Tenn. 620. In the last named case the Court pointed out the distinction between those cases where the juror is found to have been incompetent *propter defectum,* as for relationship, etc., and where he is found to have been incompetent because he had prejudged the case, when a different rule applies as to the time of challenge.

Conceding that one who had been at one time adjudged insane, and confined for years on this ground, might well be rejected for service as a juror to try a case calculated to stir the passions and disturb the mental equilibrium of men, the challenge must be presented upon his *voir dire* examination.

Complaint of the other juror, E. L. Meador, was upon two distinct grounds, first because, as shown, he had some years before been convicted of a felony and adjudged infamous. However, the record was made to show that later, and some years before the trial of the instant case, his disability had been removed by a court judgment. Here, again, the challenge was of the *propter defectum* class and comes too late. This complaint did not

charge impartiality, did not tend to establish that this juror was prejudiced, or had prejudged the case.

██ ██ But, with respect to this same juror, the challenge went further and presented a ground which seems to us to fall clearly within the *propter affectum* class, to which, as recognized by our decisions, a different rule applies. When it appears that the constitutional right to trial before an impartial jury is invaded (Const. Art. I, Sec. 9), the challenge must be heeded, even though not made until after verdict. Certainly when the facts were previously concealed from the defendant, and ignorance was reasonably excusable, as we find here.

In *Monday v. State, supra,* after reviewing our cases and applying the rule established thereby as to disqualifications of the *propter defectum* class, the Court added:

"It is true that numerous cases hold that, where some particular disqualification of a juror was unknown to the defendant and .his attorney at the time of the jury's selection, objection may properly be heard even after verdict, but examination of these cases reveals that in such instances the objection allowed to be. made after the impaneling of the jury touched the objectionable juror's partiality and was not merely *propter defectum.*" (page 265 of 160 Tenn., page 658 of 23 S. W. (2d)).

The affidavits of defendant and his counsel, supported by exhibited court records, show that juror Meador was prosecutor in the same Sumner County court in a prosecution for assault with intent to rape, an offense of the like heinous nature of which the defendant in the instant case stood charged. It appeared that the prosecution had been begun some years before; that when then called for trial the defendant had interposed the defense of present insanity, had been so adjudged and remanded to a state institution for the insane to be returned to the

Sumner court for trial if and when he recovered his sanity; that in 1940 he was returned and arraigned; that the case was continued several terms and, in the fall of 1940 (about three years before the offense in the instant case was committed) for reasons unexplained, the case was placed on the retired docket, and that this was its status when the instant case was called for trial. These facts appear to be undisputed.

Meador was asked on his *voir dire* examination, "what experience have you ever had in court?," and answered, "none, except that I was called as a juror at this term of court in the case of *State* v. *Ray Dean* and excused by the court." As above shown, Meador had had at least two experiences in court of exceptional character.

In one case he had been a defendant, found guilty and served a term in prison; in the other as prosecutor on an indictment for a grave offense with an extreme penalty of twenty-one years, of a character similar to that of the case he had been called to try as a juror. His answer was patently false, and must have been knowingly so. That for some reason which the State did not elect to disclose the active prosecution of this assault to rape case in which he was prosecutor was being for the time suspended, did not relieve him of the obligation to disclose his leading participation in it, in answer to the question put to him on his *voir dire* examination. It should be remarked that it is immaterial that his case was on the "retired" and not the trial, or appearance docket. See *Riley* v. *Bussell*, 48 Tenn. 294, 295; *Murphy* v. *State*, 77 Tenn. 373; *Hunt* v. *State*, 2 Shannon Cas. 395. And 35 C. J., 332-333 (n. 37-39), cites to the same effect *Chicago, R. I. & P. R. Co.* v. *Downey*, 85 Ill. App. 175; *Plummer* v. *People*, 74 Ill. 361. Our cases above cited not only hold that having a suit in the same court

disqualifies for jury service, but that the statute excludes him whether his suit is for trial at that term or not.

Does there not arise on the facts above shown a legal presumption of the want of that impartiality which our constitutional requirement contemplates?

■ From 20 Words and Phrases (Perm. Ed.), page 191, we take this definition: "The 'impartial jury' guaranteed by constitutional provisions is one which is of impartial frame of mind at the beginning of trial, is influenced only by legal and competent evidence produced during trial, and bases its verdict upon evidence connecting defendant with the commission of the crime charged," and, further, "consists of twelve impartial men."

In the course of his learned discussion of our constitutional provision, in *Eason* v. *State,* 65 Tenn. 466, at page 469, Nicholson, C. J., gives the following definition of "impartial" and emphasizes the "secondary or more general sense" in which the word is, under given conditions, to be understood. We quote:

"According to the definition of our standard lexicographer, a man who is 'impartial' is one 'who is not biased in favor of one party more than another;' who is 'indifferent; unprejudiced; disinterested; as an impartial judge or arbitrator.' The primary idea contained in this definition, is freedom from personal bias, indifference between the parties as persons; 'not prejudiced' against one or the other; 'disinterested' as between them. But it is clear that the word was not used exclusively in its primary sense, but in its secondary or more general sense—as freedom from any bias, or indifference, or disinterestedness—," etc.

■ It is in this broader and more general sense that we apply the requirement of impartiality in the instant

case and in which we find it recognized in adjudged cases. "Independently of statute a juror is incompetent on the ground of bias if he is a party to, or interested in, another suit of the same character or involving the same controversy." 35 C. J., page 333, citing, among others, *International Agricultural Corp.* v. *Willette,* 120 Me. 423, 115 A. 170; *Wilder* v. *Louisville R. Co.,* 157 Ky. 17, 162 S. W. 557; *Jeffries* v. *Randall,* 14 Mass. 205; *Jefferson County* v. *Lewis,* 20 Fla. 980, (citing *Fleming* v. *State,* 11 Ind. 234; *Davis* v. *Allen,* 11 Pick. (Mass.), 466, 22 Am. Dec. 386; Profatton Jury Trials, Sec. 168). And see, to the same effect, *Brown* v. *S. H. Kress & Co.,* 170 S. C. 178, 170 S. E. 142; *McCarthy* v. *Cass Ave. Ry.,* 92 Mo. 536, 4 S. W. 516.

*International Agricultural Corp.* v. *Willette, supra,* was a suit to recover against a fertilizer company on a shipment of adulterated fertilizer. A new trial was granted by the supreme court on a showing, although made after verdict, that a juror was at the time interested in a claim on similar grounds against another and different company, and when the juror had failed to disclose this fact in response to appropriate question on his *voir dire* examination. Declaring that (page 425 of 120 Me., page 171 of 115 A.): "at the very basis of our trial system stands a disinterested, unprejudiced jury as triers of the fact, a body every member of which should be free from bias and prejudice," the court said that this juror "must have been deeply interested in the outcome of this litigation." Supporting the rule that, "the existence of similar circumstances has been recognized as a ground of disqualification," the court cites *May* v. *Elam,* 27 Iowa 365; *Pearcy* v. *Ins. Co.,* 111 Ind. 59, 12 N. E. 98, 60 Am. Rep. 673; *Davis* v. *Allen, supra.*

The general proposition is approved in the text of 31 Am. Jur. 671-672, citing cases, that bias based on experiences in certain classes of actions, such as auto collision cases (*Drury* v. *Franke*, 247 Ky. 758, 57 S. W. (2d) 969, 88 A. L. R. 917) or against certain crimes (homicide of a certain kind, *State* v. *Marfaudille*, 48 Wash. 117, 92 P. 939, 14 L. R. A. (N. S.), 346, 15 Ann. Cas. 584) disqualifies a juror, the theory being that a prejudicial bias has been implanted in the mind which will probably influence the judgment.

■ Bias, which, as declared in *People* v. *Reyes*, 5 Cal. 347, "has no degrees," is aptly defined in a note to 35 C. J., 327, as, "A leaning of the mind; propensity or prepossession towards an object or view, not leaving the mind indifferent; bent; inclination," citing Webster and quoted in *Gulf, C. & S. F. R. Co.* v. *Gilvin* (Tex. Civ. App.), 55 S. W. 985.

In most of the cases above mentioned property only was involved. If in such cases the courts have been so zealous to insure the right to an impartial jury, how much more scrupulously should this right be guarded when life or liberty hangs in the balance?

Many other illustrations might be given where the courts have applied the secondary meaning to "impartial juror," and excluded from service, as subject to bias, those whose intimate associations, experiences, and contingent interests, financial or social, were such as to warp or sway, in prejudice or passion, the judgment in the case on trial, in response to those natural and human instincts common to mankind.

The State presented an affidavit by Meador, but it is confined wholly to the matter of his former conviction and the removal of his infamy disability. It contains no word of explanation of his connection with the rape as-

sault case, why its prosecution is now being suspended—whether because of absence of witnesses expected to return, or otherwise. We have nothing to suggest an abatement of his interest in that case and its prosecution, nothing as to his connection with it or how close or otherwise his relationship to the wronged female. We are left to conjecture what elements of suggestive similarity exist between the facts of the assault in his case and those of the instant case. Certainly a presumption obtains that he entertained and still harbors a grievance against that other ravisher, intensified, perhaps, by frustration of his desire for vengeance. Surely, it requires no argument to convince that a man so circumstanced would not enter upon the trial of this accused free from that natural feeling of resentment which had moved him to institute and keep alive a prosecution for a like offense. As this case progressed his mind inevitably would turn to his own unsatisfied wrong and his judgment would be so affected thereby as to deprive him of the capacity to act impartially, disinterestedly, and dispassionately. Moreover, his affidavit offers no excuse for his false swearing on his examination and we are inclined to the view that a presumption arises from this willful concealment of ulterior and prejudicial motives.

In our familiar and generally approved text book, "The History of a Law Suit" (6 Ed.), page 283, the following are among the disqualifications of a juror which are enumerated: If he is interested in the case, or has an interest in a similar case (Code, Sec. 10016), or he has been convicted of a crime rendering him infamous, or he has a suit pending in the same court, or he has prejudged the case, or entertains such views about the case as will prevent him from looking alone to the evidence for his verdict. There can be little doubt that this juror

588

falls within the letter of one or more of these grounds of disqualification and within the spirit of them all. No fair minded judge would have failed to sustain a timely objection to this juror, if the facts which have been made to appear had been disclosed on his *voir dire* examination.

We have heretofore indicated the opinion that the disqualification of partiality is not of the general *propter defectum* class subject to the rule which cuts off the right of objection after verdict.

In his opinion in *Nashville, C. & St. L. Ry.* v. *Williams*, 164 Tenn. 144, 146, 46 S. W. (2d) 815, Mr. Justice Cook, with his characteristic learning, has interestingly discussed the distinction at common law between challenges *propter defectum* and those *propter affectum*, citing Blackstone, Book III, Chap. 13, page 279. He says that jurors are subject to challenges *propter affectum*, which cannot be overruled upon a *prima facie* showing justifying a suspicion of malice or favor.

Bouvier mentions as causes for challenge, "*Propter defectum* (on account of some defect) from personal objections, as alienage, infancy, lack of statutory requirements; *propter affectum* (on account of partiality), from some bias or partiality either actually shown to exist or presumed to exist from circumstances." 1 Bouv. Law Dict. (Rawle's Third Revision), page 451.

Stricter observance of this classification would clarify the procedural distinction in the right to challenge after verdict the fitness of jurors, and confine favorable consideration to those cases only where a fair trial before an impartial jury, as demanded by the Constitution, has been denied.

It should be borne in mind that the issue here does not involve, as before shown, a statutory ground or right

only, to which the Act of 1911 (Code, Sec. 10654) was applied and limited in *Mahon* v. *State*, 127 Tenn. 535, 156 S. W. 458; *Manning* v. *State*, 155 Tenn. 266, 292 S. W. 451; and *Cooley* v. *State*, 174 Tenn. 168, 124 S. W. (2d) 250.

The assignment presenting this question must be sustained. Discussion of others becomes unnecessary.

It is to be hoped that on a retrial of this case evidence which would seem to be available will be produced bearing on the vital and disputed issue of identification. For example, on the trial the young woman testified, as we have shown, contrary to the account given by her to the officers to whom she reported, that the defendant drove her, before going into the country, to the "Triangle," a popular public refreshment resort, where they parked and were served by a colored waiter whose name she was told was George Wallace; also, that while she was eating ice cream and her companion taking a soft drink, in a car next to his were two girls whom she knew as "Polly" and "Roy." The record indicates that these girls were present at the trial, but not introduced. Neither was this waiter. It would seem highly important for the State to verify by these three witnesses the alleged presence of the defendant with this young woman at this place and time. Proof of his identification would thus be greatly strengthened.

Again, the young woman testified that her assailant told her that night he was going into the Army February 12th, and it developed that there was an entry made the Sunday following by Miss Dodds in her diary which gave this date. The theory of the State is that Miss Dodds was given this date by the defendant that night, when visiting her, shortly before he is alleged to have committed the assault and told his victim the same thing.

If the State is right in its contention that this date entered by Miss Dodds in her diary was given her by the defendant and was shortly afterwards repeated by him to his victim, this constitutes very persuasive identification of him. However, Miss Dodds testified this date was given her by officer Roberts and not by the defendant. (Roberts was not introduced in rebuttal of her testimony.) And it appears that the grandmother of Miss Dodds was present when this date was allegedly given by the defendant that evening. While she was away from Gallatin on a visit when the trial was had, she resides in Gallatin and it would seem her testimony regarding this very significant matter should be available on another trial. Again, the record is not clear touching the vehicle used on this occasion, and it would seem that additional proof is available as to this important matter. It is to be hoped that on a new trial the case will be more fully developed touching these and other details.

For the reasons stated, the judgment is reversed and the case remanded for a new trial.