Claude W. NICHOLS, Petitioner-Appellant,

v.

C. Murray HENDERSON, Warden, Tennessee State Penitentiary, Respondent-Appellee.

No. 17650.

United States Court of Appeals Sixth Circuit.

Feb. 28, 1968.

Vincent E. Wehby (Court Appointed), Nashville, Tenn., for appellant.

David W. McMackin, Asst. Atty. Gen., Nashville, Tenn., for appellee; Henry C. Foutch, Nashville, Tenn., on brief;

George F. McCanless, Atty. Gen., and Reporter, State of Tenn., of counsel.

Before WEICK, Chief Judge, and PHILLIPS and COMBS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal from the denial of a petition for writ of habeas corpus in which appellant sought to void his conviction for first degree murder for which he was sentenced to ninety-nine years in the State penitentiary.

The conviction was affirmed by the Supreme Court of Tennessee in a comprehensive opinion. Nichols v. State of Tennessee, 200 Tenn. 65, 289 S.W.2d 849. Parallel civil litigation in the State courts is reported at Anderson v. Nichols, 39 Tenn.App. 503, 286 S.W.2d 96, in which the Supreme Court of Tennessee denied certiorari. Reference is made to these reported opinions for a more complete recitation of facts. Facts will be stated here only to the extent necessary to dispose of the issues raised on this appeal.

As originally filed the petition raised two questions:

1. The jury in the State trial court was composed of only eleven qualified persons since one of the members of the jury had been convicted and rendered infamous and

2. The jury panel had been selected from the rural area of Humphreys County upon specific instructions of the State trial judge. As a result, the petitioner claims an alleged violation or infringement of his constitutional rights at the time of his trial in the State court.

District Judge William E. Miller conducted a full evidentiary hearing on these issues and made detailed findings of fact and conclusions of law.

The record discloses that one of the members of jury had been convicted of petit larceny and sentenced to imprisonment for one year. The conviction of this juror occurred approximately sixteen years prior to the Nichols trial.

Nichols personally employed four competent lawyers to represent him at the murder trial and on his appeal to the Supreme Court of Tennessee. The District Court found that before the jury retired to reach its verdict, at least one of Nichols' attorneys knew that the juror in question had been convicted of a felony. Nichols' counsel did not object to the qualifications of this juror until after the jury verdict was returned. The juror's disqualification was not presented as error on appeal to the State Supreme Court.

For purposes of determining the time at which a juror may be challenged effectively for disqualification, Tennessee courts recognize two classifications of challenges, *propter defectum* and *propter affectum*. Challenges based upon *propter affectum* disqualifications may be made after the verdict is returned. However, in order to challenge a juror for *propter defectum* disqualification, the challenge must be made before the verdict. According to the Court's discussion in Durham v. State, 182 Tenn. 577, 188 S.W.2d 555, 160 A.L.R. 746, the factor which distinguishes the two types of challenges is whether the juror has prejudged the case.

That partiality is the touchstone of the *propter affectum* challenge is emphasized by the following statement in *Durham*:

"In Monday v. State, supra [160 Tenn. 258, 23 S.W.2d 656] after reviewing our cases and applying the rule established thereby as to disqualifications of the *propter defectum* class, the Court added:

" 'It is true that numerous cases hold that, where some particular disqualification of a juror was unknown to the defendant and his attorney at the time of the jury's selection, objection may properly be heard even after verdict, but examination of these cases reveals that in such instances the objection allowed to be made after the impaneling of the jury touched the objectionable juror's partiality and was not merely *propter defectum*.' (page 265 of 160 Tenn., page 658 of 23 S.W.(2d))." 182 Tenn. at 582, 188 S.W.2d at 557.

■ Nichols makes no attempt to show that the inclusion of the juror who had been convicted of petit larceny resulted in a partial or prejudicial assessment of the evidence presented at his murder trial.

Based upon trial counsel's failure to make the challenge before the return of the verdict and the *propter defectum* nature of the disqualification under Tennessee law, the District Court was correct in concluding that in the absence of a showing of prejudice, no constitutional right of the appellant was violated by the use of the disqualified juror.

■ The District Court further held that appellant failed to carry the burden of proof in showing that the State trial judge restricted the summoning of jurors to the rural areas of Humphreys County. The record supports this finding of fact.

■ After the District Court had announced its decision, appellant supplemented his petition for writ of habeas corpus on the ground that he received an unfair trial because of widespread adverse pre-trial publicity, relying upon Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600. The District Judge conducted a second evidentiary hearing on this issue and held the facts of the present case do not bring it within the application of *Sheppard*.

In distinguishing the *Sheppard* case, the District Court noted:

"[I]n the Sheppard case, Sheppard's attorneys, at various stages of the trial, moved for (a) continuances, (b) a change of venue, and (c) for a mistrial, all of which motions were overruled by the trial judge. From the record in this case, it is apparent that Nichols' attorneys by such motions or otherwise, raised no question as to adverse newspaper publicity and made no objection whatever to the conduct of the trial by the trial judge."

The making of motions and objections such as those discussed above is not nec-essarily a prerequisite to a finding that excessive publicity deprived an accused of Fourteenth Amendment due process. The failure to make such motions, however, is a formidable circumstance which tends to negate the purported impact of the alleged publicity. Stroble v. State of California, 343 U.S. 181, 194, 72 S.Ct. 599, 96 L.Ed. 872.

The Supreme Court has said that while "most cases involving claims of due process deprivations * * * require a showing of identifiable prejudice to the accused" a State may employ a procedure which "involves such a probability that prejudice will result that it is deemed inherently lacking in due process." Estes v. State of Texas, 381 U.S. 532, 542–543, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543.

Appellant points to one incident of publicity which allegedly resulted in identifiable prejudice. Nichols alleged that he was prejudiced by the presence in the courtroom of newspapers whose headlines heralded that Nichols had lost a civil suit which involved matters also at issue in the criminal trial. The District Court's conclusion that the jury did not see the newspapers is supported by the deposition of the State trial judge that the officers in charge of the jury informed him that the jury could not have seen the newspapers.

Appellant next relies on procedures which he alleges were so prejudicial that they were inherently lacking in due process. In Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961) the Supreme Court recognized that intense pretrial news coverage of sensational criminal cases often creates a situation in which "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." The constitutional requirement is not that the juror will not have formed any preconceived notion of the guilt or innocence of the accused. Rather the test is whether "the juror can lay aside his impression or opinion and render a verdict based on

the evidence presented in court." 366 U.S. at 723, 81 S.Ct. at 1643.

The evidence supports the District Court's conclusion that based upon the voir dire examination the Nichols' jury had not prejudged the case. Both the State trial judge and Nichols' own trial counsel were satisfied with the jurors selected.

As soon as a juror was selected, he was cloistered. When the entire jury was selected, it remained sequestered throughout the full course of the trial. Thus, the trial judge sought to adhere to the undeviating rule that the jury's verdict must "be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." Sheppard v. Maxwell, 384 U.S. at 351, 86 S.Ct. at 1517, quoting Mr. Justice Holmes in Patterson v. State of Colorado ex rel. Attorney General, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879.

The newspaper coverage about which appellant complains occurred in the Nashville press. Appellant was not tried in Nashville, but in Waverly, the county seat of rural Humphreys County, sixty-four miles west of Nashville.

This Court strongly disapproves of the practice of allowing photographers in a courtroom while a trial is in progress. Nichols' privately retained counsel apparently did not believe that the presence of the photographers resulted in any prejudice, for they made no effort to exclude them. Under the record in the present case, we cannot say that the District Judge erred in holding that appellant failed to establish that the presence of photographers in the courtroom disrupted or delayed the proceedings or in any manner deprived appellant of his constitutional right to a fair trial.

Appreciation is expressed to Mr. Vincent E. Wehby of the Nashville, Tennessee, bar, who prepared an excellent brief and presented an able oral argument as court-appointed counsel for appellant.

Affirmed.