IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

SEPTEMBER 1997 SESSION



FILED

March 24, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | |
| | ) | NO. 03C01-9703-CR-00085 |
| Appellee, | ) | |
| | ) | CLAIBORNE COUNTY |
| v. | ) | |
| | ) | HON. LEE ASBURY |
| CHARLES E. LAKINS | ) | |
| | ) | (Poss. Cocaine w/ Int. to Sell) |
| Appellant | ) | |
| | ) | |

For the Appellant

Michael G. Hatmaker
571 Main Street
P.O. Drawer 417
Jacksboro, TN. 37757

For the Appellee

John Knox Walkup
Attorney General & Reporter

Timothy F. Behan
Assistant Attorney General
2nd Floor Cordell Hull Building
425 Fifth Avenue North
Nashville, TN. 37243-0493

William Paul Phillips
District Attorney General

E. Shayne Sexton
Assistant District Attorney General
P.O. Box 323
Jacksboro, TN. 37757

Michael O. Ripley
Assistant District Attorney General
P.O. Box 323
Jacksboro, TN. 37757

OPINION FILED:_____

AFFIRMED

WILLIAM M. BARKER, JUDGE

**OPINION**

The appellant, Charles E. Lakins, appeals as of right the convictions and sentences he received in the Criminal Court of Claiborne County. After a trial by jury, the appellant was convicted of possession with intent to sell a Schedule II controlled substance, to wit: cocaine, in an amount in excess of twenty six (26) grams, a Class B felony; and possession with intent to deliver drug paraphernalia, to wit: inosital, a Class E felony. The trial court sentenced the appellant as a Range I standard offender to ten (10) years for possession of cocaine with intent to sell and to one (1) year for possession of drug paraphernalia with intent to deliver. The sentences were ordered to run concurrently for a total effective sentence of ten (10) years in the Tennessee Department of Correction.

On appeal, the appellant contends that: (1) The trial court erred by failing to suppress physical evidence taken from appellant's residence and inculpatory statements made by the appellant on the date of arrest; (2) The trial court erred by excluding witness testimony and audio taped evidence pertaining to the pre-trial statements of Walter Ingle; (3) The trial court erred by restricting the examination of Walter Ingle in the presence of the jury; and (4) The appellant was convicted by a jury that was comprised in violation of the Tennessee and United States Constitutions.

After a review of the record, we find no reversible error and affirm the judgment of the trial court.

**FACTUAL BACKGROUND**

The events preceding the appellant's arrest on September 16, 1994, are undisputed. Chief Deputy Kelly Anders and Lieutenant Ben Evans of the Claiborne County Sheriff's Department went to the appellant's residence during the late afternoon of that day to assist one Charles LeFevers in the recovery of a red pick-up truck. Mr. LeFevers claimed that his red truck had been taken from him in Kentucky by one Sillus Lankford and thereafter had been delivered to the appellant's residence

as collateral for a cocaine deal. Mr. LeFevers had driven by the appellant's residence earlier in the day and had seen the truck parked in the driveway. He requested assistance from the Claiborne County Sheriff's Department because he had observed several men armed with guns on appellant's property.

Deputy Anders and Lieutenant Evans drove separately from Mr. LeFevers and followed him out to the appellant's home. Within a few miles of appellant's residence, Deputy Anders drove behind and eventually passed a red pick-up truck that was occupied by two men. He testified that he drove past the truck and continued on to the appellant's home because he was not sure if the truck was the vehicle in question.[1] Upon arrival at the appellant's residence, Anders overheard Mr. LeFevers tell Lieutenant Evans that the red truck they had passed was in fact the missing truck. Thereafter, Anders and Lieutenant Evans entered upon the appellant's property to question appellant about the truck.

Deputy Anders and Lieutenant Evans left their vehicle parked in front of appellant's house and walked up the driveway and sidewalk leading to the front porch. With their guns still fastened in their holsters, the two men climbed the stairs onto the porch and walked across to the front door. Deputy Anders testified that the front door was standing wide open during their approach. Looking in, Anders immediately observed the appellant sitting on a couch with a plastic bag in one hand and a spoon in the other. He noticed that the plastic bag contained a white powder-like substance and he noticed a digital scale and beer can laying in a chair beside the appellant. Anders, thereafter, drew his gun and entered the room to arrest the appellant.

After Deputy Anders and Lieutenant Evans secured the room, they found in open view a plastic bag and beer can containing a white powder-like substance and a bottle of inosital sitting on a television set. The appellant spoke first and admitted that

---

[1]Deputy Anders testified that Mr. LeFevers' truck had not been reported stolen and that the occupants of the red truck did not violate any traffic laws. Therefore, Anders claimed that he did not have grounds to conduct a traffic stop.

3

he was caught in the act of "cutting" cocaine for resale.[2]  He consented to a police search of his residence which revealed over twenty six (26) grams of cocaine, the bottle of inosital, the digital scale, a shotgun, and several plastic bags.

Based upon that evidence, the appellant was charged and convicted of possessing cocaine and drug paraphernalia with intent to sell.  On appeal, the appellant challenges both his convictions and sentences.

**ANALYSIS**

The appellant first contends that the trial court erred in failing to suppress physical evidence obtained during the police entry and search of his residence.  He further contends that his incriminating statements made before the arrest were inadmissible as fruit of the unlawful search and seizure.

This issue is without merit.

At the suppression hearing, the appellant argued that Deputy Anders and Lieutenant Evans acted unlawfully when they came upon his property and approached his  front door without a warrant.  He contended that any evidence obtained during and subsequent to the illegal entry, even if in plain view, was inadmissible at trial.  The trial court found that the officers lawfully entered appellant's property and used the walkway to approach the front door.  The court, therefore, ruled that the cocaine and paraphernalia evidence observed in the officers' plain view was properly seized and admissible at trial.  In addition, the trial court ruled that the appellant's unsolicited, inculpatory statements were also admissible.

We find no evidence to disturb the ruling of the trial court.  The record supports a finding that Deputy Anders and Lieutenant Evans lawfully entered the appellant's property solely to question him about Mr. LeFever's missing truck.  In conducting their

---

[2]Before his arrest, the appellant told Deputy Anders:
I can't believe after all the years I do something so stupid - Get caught in the act of selling cocaine - Sit right in the open and do it.  It's nobody's fault but my own - Get caught with the s___ in my hand.  You're the luckiest person I've ever known just walk right in on me cutting the s___.  I can't believe this happened.  I can't deny this, caught red handed, right in the act.

4

official police business, the officers used the open pathways from the road to the front door and made no attempts to deviate from that course or to peer into appellant's windows. Moreover, the facts demonstrate that Deputy Anders inadvertently discovered the appellant's possession of cocaine after he approached the open doorway.

When pursuing legitimate business objectives, police officers have a right to use the sidewalks, pathways, or similar passageways leading from a public roadway to the front door of a dwelling.[3] That area represents an implied invitation to the general public and is not within the zone of privacy protected by either the Fourth Amendment or our state constitution. See State v. Harris, 919 S.W.2d at 623-24. Therefore, Deputy Anders and Lieutenant Evans were lawfully present on appellant's property when they observed the white powder-like substance and the drug paraphernalia.

Moreover, the appellant concedes that the cocaine and the drug paraphernalia were in plain view when the officers stepped onto his front porch. The front door was standing wide open when the appellant was observed in the act of preparing cocaine for resale. We conclude that there was no illegal entry or search which would warrant suppression of the physical evidence obtained at appellant's residence. Furthermore, having found the officers' conduct to be valid under the Fourth Amendment and Article I, section 7 of the Tennessee Constitution, we conclude that the appellant's unsolicited statements made before his arrest were also admissible at trial.

## II.

The appellant next contends that the trial court erred in excluding witness testimony and audio taped evidence pertaining to the pre-trial statements of Walter Ingle. He argues that Mr. Ingle should have been declared "unavailable" after he invoked his Fifth Amendment privilege and that his statements should have been

---

[3]See State v. Harris, 919 S.W.2d 619, 623-24 (Tenn. Crim. App. 1995); State v. Marcus Ellis, No. 01C01-9001-CR-00021 (Tenn. Crim. App. at Nashville, Dec. 12, 1990).

admitted as statements against interest under Rule 804(b)(3) of the Tennessee Rules of Evidence.

Although we find that Mr. Ingle was "unavailable" after he invoked his Fifth Amendment privilege, we conclude that any error concerning the exclusion of his statements was harmless beyond a reasonable doubt.

At trial, the appellant called Walter Ingle to testify concerning Ingle's pre-trial statements in which he alluded to planting cocaine at the appellant's residence. The statements were surreptitiously recorded by Mr. Ingle's brother before appellant's trial and were heard on the record at a jury-out hearing.[4] On the tape, Mr. Ingle made statements suggesting that he had left cocaine at appellant's home the night before the arrest and that he had planned to contact the police concerning appellant's unlawful possession. Mr. Ingle, however, indicated on tape that the cocaine was not his and that he never called the police.

The trial court reviewed the statements in question and determined that Mr. Ingle would invoke his Fifth Amendment privilege if called to testify. The trial court thereafter ruled that Mr. Ingle was not "unavailable" for the purposes of Rule 804 of the Tennessee Rules of Evidence and that any evidence concerning the recorded statements was inadmissible hearsay.

We find that Mr. Ingle should have been declared "unavailable" under Rule 804(a)(1) of the Tennessee Rules of Evidence.[5] Having invoked his privilege under the Fifth Amendment, Mr. Ingle received an exemption from testifying concerning the content of his recorded statements. Nevertheless, although "unavailable," his

---

[4]The statements in question were recorded during a conversation between Mr. Ingle and his brother, Lonnie DeWayne Ingle. The recording was made a few days after the appellant's arrest when Lonnie Ingle visited Walter Ingle at the latter's home to elicit information concerning the alleged cocaine "frame up."

[5]Rule 804(a)(1) provides that a declarant witness is "unavailable" when he "is exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement."

statements in their entirety were not admissible as statements against interest. Rule 804(b)(3) provides that a statement is admissible if:

> at the time of its making [the statement was] so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

We have carefully reviewed Mr. Ingles' statements contained in the tape recording and find that many of them do not qualify as statements against interest under Rule 804(b)(3). Although Mr. Ingle suggested that he left cocaine at the appellant's home, there are inconsistencies as to whether Mr. Ingle left the cocaine by accident or whether he intended to plant evidence. Moreover, in the course of the recorded conversation, Mr. Ingle asserted that he did not own the cocaine and that the cocaine was left by another person as part of a drug sale.

Furthermore, other evidence in the record suggests that the recorded statements were fabricated and unreliable. At the hearing on the motion for a new trial, both Lonnie Ingle and Walter Ingle testified that the tape recording was a fabrication and that the appellant had paid Walter Ingle two thousand ($2,000) dollars to make the recorded statements. In denying the motion for a new trial, the trial court stated that the recording and the alleged "frame up" were mere attempts to commit fraud upon the court.

We conclude that although certain statements were admissible as being against Mr. Ingle's penal interest, the trial court's error in excluding them was of little significance in light of the convicting evidence. Based upon the overwhelming proof against the appellant, any error involving the exclusion of Mr. Ingle's statements was harmless beyond a reasonable doubt. See Tenn. R. App. P. 36(b).

### III.

The appellant next contends that the trial court erred by restricting the examination of Mr. Ingle in the presence of the jury. He argues that the trial court

7

should have allowed him to question Mr. Ingle as to whether Ingle planted evidence or made statements about planting evidence at the appellant's home.

This issue is without merit.

Appellant's counsel examined Mr. Ingle at a jury-out hearing concerning Ingle's recorded statements and his alleged involvement in appellant's case. Mr. Ingle declined to answer under the Fifth Amendment and further indicated that he would assert his privilege if called to testify in the presence of the jury. The trial court thereafter ruled that Mr. Ingle could not be examined in front of the jury concerning his recorded statements or whether he planted evidence at the appellant's home. The appellant, however, was permitted to examine Mr. Ingle as to whether Ingle would answer any questions pertaining to the subject matter of appellant's case.

The appellant argues that the trial court's restriction violated his right to a fair trial. We disagree. Our supreme court has previously held that the calling and examination of a witness who refuses to testify does not fulfill the purpose of compulsory process. See State v. Dicks, 615 S.W.2d 126, 129 (Tenn. 1981). Moreover, even if the appellant had been allowed to fully examine Mr. Ingle, the jury would have been instructed to disregard any evidence or inference from Ingles' decision to invoke his Fifth Amendment privilege. See id. We, therefore, conclude that the trial court exercised proper discretion to limit the examination of Mr. Ingle in the presence of the jury.

**IV.**

The appellant next contends he was convicted by a jury that was comprised in violation of the Tennessee and United States Constitutions. He argues that Jury Foreperson Bill Powers was not a resident of Claiborne County, Tennessee, as required by Tennessee Code Annotated Section 22-1-101 (1994). Because of this disqualification, the appellant claims that he was convicted by a constitutionally invalid jury. The appellant has waived any such challenge to Powers' qualification.

8

Tennessee courts recognize two classifications of jury challenges, *propter defectum*, "on account of defect," and *propter affectum*, "for or on account of some affection or prejudice." See State v. Brock, 940 S.W.2d 577, 579 (Tenn. Crim. App. 1996) (citation omitted). Objections based upon general disqualifications, such as age, residence, relationship, feeble mindedness and the like are within the *propter defectum* class and, as such, are considered waived if not made prior to the verdict.

Durham v. State, 188 S.W.2d 555, 557 (Tenn. 1945). However,

> . . . where some particular disqualification of a juror was unknown to the defendant and his attorney at the time of the jury's selection, objection may properly be heard even after verdict, but . . . in such instances the objection allowed to be made after impaneling of the jury touched the objectionable juror's partiality and was not merely propter defectum.

Id. (quoting Monday v. State, 160 Tenn. 258, 265, 23 S.W.2d 656, 658 (1930)).

There is no indication from the facts contained in the record that Powers' disqualification affected his partiality in the case. The juror's address and telephone number were provided on his juror questionnaire. The record does not indicate that the residency qualification was specifically posed to the venire during voir dire. In the absence of questions to provide specific answers, the appellant cannot now object to the juror's failure to volunteer such information. See Clariday v. State, 552 S.W.2d 759, 771 (Tenn. Crim. App. 1976), perm. To appeal denied, Tenn. 1977). Moreover there is no indication that the objection could not have been discovered with the exercise of due diligence before the verdict was reached just as easily as it was discovered after trial. Notwithstanding waiver of this issue, mere statutory ineligibility does not render a juror incapable of making an intelligent and impartial verdict. Accordingly, this issue is without merit.

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
WILLIAM M. BARKER, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE


_____
DAVID G. HAYES, JUDGE

10