IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 7, 2007

## STATE OF TENNESSEE v. KENDRICK D. RIVERS

**Appeal from the Circuit Court for Madison County**
**No. 04-365     Donald H. Allen, Judge**

---

**No. W2006-01120-CCA-R3-CD  - Filed January 7, 2008**

---

The defendant, Kendrick D. Rivers, was convicted of possession of more than .5 grams of cocaine with intent to sell and/or deliver, evading arrest, resisting arrest, and criminal trespass.  The trial court imposed an effective sentence of twelve years' incarceration.  In this appeal, the defendant asserts (1) that the evidence is insufficient to support his conviction for possession of cocaine; (2) that one of the jurors had a bias against him; and (3) that the State engaged in prosecutorial misconduct by knowingly using false testimony.[1]  Finding no error in the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and D. KELLY THOMAS, JR., JJ., joined.

Colin Morris, Jackson, Tennessee (at trial); and Kendrick D. Rivers, Henning, Tennessee, pro se (on appeal).

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; Jerry Woodall, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee

**OPINION**

The defendant's convictions relate to an incident on January 17, 2004, in Jackson, Tennessee.  On that evening, Jackson Police Officer Roland James was on routine patrol in Parkview Courts, a housing property owned and managed by the Jackson Housing Authority, when he observed the defendant standing with a group of individuals.  Because Officer James knew that the

---

[1]Although the defendant lists a fourth issue, "violation of [F]ourth Amendment protection against unreasonable search and seizure," this issue is not included in the argument portion of the defendant's brief.  In consequence, the issue will not be considered by this court.  *See* Tenn. Ct. Crim. App. R. 10(b).

defendant had been placed on the "no trespass list" for Parkview Courts, he stopped his patrol car and asked the defendant to stop. At that point, the defendant "took off running," and Officer James gave chase and called for backup. Officer James testified that as he chased the defendant, he saw the defendant throw down "a plastic bag that may have contained narcotics." Officer James did not stop to retrieve the bag and instead continued to chase the defendant until he "caught up with [the defendant] when he tried to get into a yellow Cadillac." The two men struggled, and Officer James "pulled [his] gun out and stuck it in [the defendant] and asked him to come out [of] the vehicle." With assistance from fellow officer Marvin Brooks, Officer James was eventually able to place the defendant in custody. A search of the defendant's person revealed several clear plastic baggies, a cellular telephone, $1100, and "a box of sandwich wrap plastic bags in his back pocket." Officer James explained that "most of your drug dealers and pushers will use sandwich bags to separate the cocaine or the crack and wrap it individually so that they can distribute it or sell it."

Upon searching the area where the defendant had jettisoned his package, the officer discovered a plastic bag containing a large amount of cocaine. Officer James testified that the amount of cocaine was more than would generally be possessed for personal use, explaining, "Normally, if a person's going to purchase cocaine for personal use, it will be one or two rocks maybe and then normally weighs like less than half a gram." He also testified that the "street value" of a gram of cocaine is $100. After his arrest, the defendant was transported to the jail for booking, during which time he told Officer James that "he wasn't a punk bitch and we officers were not the only ones with guns and if he had a gun he would put some heat on us that night."

During cross-examination, Officer James conceded that there were other people congregated in the general area where the plastic bag of cocaine was found. He also acknowledged that he did not request a fingerprint examination of the plastic bag.

Officer Marvin Brooks responded to Officer James's call for backup and helped Officer James get the defendant out of the car he was trying to get into. Officer Brooks transported the defendant and recalled that during booking, the defendant said that "he wasn't no punk and that we wasn't [sic] the only ones with guns and that if he had of had one he would have used it."

Tennessee Bureau of Investigation Forensic Scientist Jessica Webb testified that testing established that the plastic bag contained 20.2 grams of cocaine.

At the conclusion of the trial, the jury returned a verdict of guilty on each charge. The trial court merged the conviction for possession of cocaine with intent to deliver into the conviction for possession of cocaine with intent to sell. In this appeal, the defendant challenges the sufficiency of the convicting evidence of possession, asserts that a juror was biased, and contends that the prosecutor engaged in misconduct by knowingly presenting false testimony.

*I. Sufficiency*

As his first issue, the defendant asserts that the evidence is insufficient to support his conviction for possession of cocaine with intent to sell or deliver. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92, 61 L. Ed. 2d 560 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). The rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

In determining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As applicable to the present case, "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . sell the controlled substance," *see* T.C.A. § 39-17-417(a)(4), and cocaine is a Schedule II controlled substance, *see id.* § 39-17-408(b)(4). Furthermore, "[i]t may be inferred from the amount of controlled substance or substances possessed by an offender, along with other relevant facts surrounding arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *See id.* § 39-17-419.

In this case, Officer James initially made contact with the defendant because he knew that the defendant was on the "no trespass list" for Parkview Courts. When approached by the officer, the defendant ran. During the ensuing foot chase, Officer James saw the defendant throw down a plastic bag. After the chase, officers discovered a large amount of cash and individual plastic sandwich bags on the defendant's person. When they searched the area where Officer James reported seeing the defendant drop a bag, officers discovered a plastic bag containing a white powder that was later determined to be 20.2 grams of cocaine. Although each officer conceded that other individuals were present in the area, there was simply no proof linking any person other than the defendant to the bag of cocaine. This evidence is sufficient to support the jury's verdict.

*II. Juror Bias*

The defendant next asserts that he was denied the right to a trial by a fair and impartial jury because juror Cynthia Bates knew him prior to trial and had, in fact, suspected the

defendant of murdering her brother. The State argues that the defendant has failed to establish "a prima facie case of juror bias or prejudice."

Tennessee Rule of Evidence 606(b), which authorizes only limited inquiry into the validity of a verdict through the questioning of jurors, provides that "a juror may testify on the question of whether extraneous, prejudicial information was improperly brought to the jury's attention" or "whether any outside influence was improperly brought to bear upon any juror." Tenn. R. Evid. 606(b). The term "extraneous information" may include a juror's personal knowledge of the defendant's prior criminal record or arrest, *see* Neil P. Cohen, et al., *Tennessee Law of Evidence* § 606.2 (3rd ed. 1995), and such information is deemed prejudicial if it has an influence on the verdict of the jury, *see Patton v. Rose*, 892 S.W.2d 410, 414 (Tenn. Ct. App. 1994). Although the defendant is entitled to a verdict untainted by extraneous, prejudicial information, the defendant bears the burden of establishing jury misconduct. *State v. Blackwell*, 664 S.W.2d 686, 688-90 (Tenn. 1984).

Generally, juror disqualifications are based upon one of two theories: (1) *propter defectum* ("On account of or for some defect." *Black's Law Dictionary* 1385 (Rev. 4th Ed. 1968)) or (2) *propter affectum* ("For or on account of some affection or prejudice." *Id.*). *Partin v. Henderson*, 686 S.W.2d 587, 589 (Tenn. Ct. App. 1984). Objections based on general disqualifications, such as familial relationship, fall within the *propter defectum* class and, accordingly, must be challenged prior to the verdict. *Id.* at 589. In contrast, disqualifications based upon *propter affectum* exist due to some bias or partiality toward one party in the litigation and may be made after the verdict. *Toombs v. State*, 270 S.W.2d 649, 651 (Tenn. 1954); *Durham v. State*, 188 S.W.2d 555, 557 (Tenn. 1945); *Partin*, 686 S.W.2d at 589. Even in cases of *propter affectum*, challenges after the verdict are not proper unless the "'particular disqualification of a juror was unknown to the defendant and his attorney at the time of the jury's selection.'" *Durham*, 188 S.W.2d at 557 (quoting *Monday v. State*, 23 S.W.2d 656, 658 (1930)); *see also State v. Akins*, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993) ("Thus, when a juror conceals or misrepresents information tending to indicate a lack of impartiality, a challenge may be made as here in a motion for new trial."). Because the defendant complains of bias or partiality in favor of the State, his claim is one of *propter affectum*. *See State v. Furlough*, 797 S.W.2d 631, 652 (Tenn. Crim. App. 1990).

Here, the defendant alleged in his motion for a new trial that juror Cynthia Bates knew him prior to trial and had suspected him of murdering her brother. At the hearing on the motion for a new trial, Juror Bates testified emphatically that she did not know the defendant and had never heard of him prior to the trial. She stated that she had never discussed the defendant as a suspect in her brother's death because her brother had committed suicide. Further, Juror Bates testified that Breon Bates, a relative of hers, had telephoned and informed her that the defendant "wrote him or something and want[ed] to know if I would say that I knew him so that he could get a new trial." Juror Bates also denied ever accusing the defendant of selling cocaine to her brother. The defendant testified that he had never met Juror Bates and had only hearsay evidence to support his claim that she was biased against him. Juror Bates's cousin, Michael Bates, testified that he knew the defendant, but his cousin had told him that she did not know the defendant. Under these

circumstances, the defendant has failed to establish that Juror Bates even knew him, let alone harbored any bias against him prior to trial. He is not entitled to relief on this issue.

### III. Prosecutorial Misconduct

Finally, the defendant asserts that the State engaged in prosecutorial misconduct by knowingly presenting false testimony. The State contends that the defendant waived this issue by failing to object to the allegedly false testimony and by failing to pursue it in his motion for a new trial. In the alternative, the State submits that the defendant has failed to establish that the State presented false testimony.

As the State correctly points out, the defendant has waived this issue by failing to pursue it in his motion for a new trial. Although the defendant initially placed the issue in his motion, he withdrew the issue from the trial court's consideration at the hearing on the motion for a new trial. In consequence, the issue has not been preserved for appellate review. *See* Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived"); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989).

### CONCLUSION

The record evinces no error, and the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE