IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1999 SESSION

FILED

August 23, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| JAMES FRANKLIN WAMPLER, | * | C.C.A. # 03C01-9712-CR-00542 |
| Appellant, | * | KNOX COUNTY |
| VS. | * | Hon. Richard Baumgartner, Judge |
| STATE OF TENNESSEE, | * | (Post-Conviction) |
| Appellee. | * | |

For Appellant:

Mark E. Stephens
District Public Defender
Sixth Judicial District

Paula R. Voss
(on appeal)
John Halstead
(at trial)
Assistant Public Defenders
1209 Euclid Avenue
Knoxville, TN 37921

For Appellee:

John Knox Walkup
Attorney General & Reporter

Elizabeth B. Marney
Assistant Attorney General
425 Fifth Avenue North
Cordell Hull Building, Second Floor
Nashville, TN 37243

Randall E. Nichols
District Attorney General
Marsha Selecman
Assistant Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The petitioner, James Franklin Wampler, appeals the trial court's denial of his petition for post-conviction relief. He claims he received ineffective assistance of counsel because his attorney failed to raise the following issues on appeal:

> (1) that the state may have learned about the existence of one of its witnesses from notes stolen from defense counsel;
>
> (2) that one of the jurors should have been disqualified;
>
> (3) that the evidence was insufficient to support a first degree murder conviction; and
>
> (4) that the trial court provided erroneous jury instructions on the issue of passion.

We affirm the judgment of the trial court.

The petitioner was convicted for the robbery and murder of forty-nine-year-old George Ashe, the manager of an AAMCO Transmission Service Center. On August 18, 1987, Donald Lines, the owner of the business, had wired $2,400.00 from Pensacola, Florida, to the victim in Knoxville via Western Union. That evening, the petitioner and the victim were seen together at a Darryl's Restaurant. On the following day, the defendant was seen in possession of some of the same denomination of bills the victim had received at Western Union and a money clip and two gold necklaces which belonged to the victim. Other circumstantial evidence, including the testimony of Jessie Hurst who confirmed that the petitioner had purchased a .38 pistol from him a few weeks before the murder, led to the convictions. The murder weapon was a .38. Prior to his arrest, the petitioner evaded authorities, first by taking a job in Nashville and then by leaving that city when he learned he was wanted by authorities. There was proof that the petitioner

2

made incriminating statements to the victim's brother, Malcolm Ashe; that he confessed to a jail inmate that he shot the victim and had stolen his money and money clip; and that he made conflicting statements to the police during his pretrial incarceration.

The petitioner was convicted of first degree murder and robbery by a deadly weapon. The trial court imposed a sentence of life plus ninety-nine years. On direct appeal, this court affirmed the convictions and the supreme court denied review. State v. James Franklin Wampler, No. 03C01-9101-CR-21 (Tenn. Crim. App., at Knoxville, Sept. 6, 1991), app. denied, (Tenn., Feb. 24, 1992). Initially, the petitioner was represented by Attorney Leslie Jeffress. At trial, he was represented by Attorney Ronald Smith. Attorney James A.H. Bell represented the petitioner at his motion for new trial and on direct appeal.

At the post-conviction evidentiary hearing, the petitioner testified that at his first meeting with Attorney Jeffress, he gave Jeffress a list of names of individuals who might have information that would be harmful to his case if called as witnesses. He stated that one of the names on the list was that of Hurst, who later testified at trial that he had sold the petitioner a .38 caliber weapon. Because Hurst was not listed on the indictment, Attorney Smith was surprised when the state amended the indictment after the beginning of the trial and called Hurst as a witness. The petitioner claims that his trial counsel was ineffective for having failed to seek a suppression of Hurst's testimony who, he contends, would not have been discovered by the state absent the theft of Jeffress' notes. He also argues that his appellate counsel should have raised the issue on direct appeal.

The record indicates that the notes were discovered in the possession

3

of Malcolm Ashe and filed under seal in the trial court. At the evidentiary hearing, David Jennings, a Knox County Assistant District Attorney General, testified that neither the law enforcement officials nor the staff of the district attorney saw the notes. He asserted that the state learned of Hurst from an independent source. The trial court accredited Jennings' testimony and further concluded as follows:

> [T]his issue was fully and completely dealt with in the Motion for New Trial. Indeed the trial judge spent considerable time considering this issue and even continued the Motion for New Trial to give defendant's appellate attorney an opportunity to fully investigate the matter. Mr. Bell did indeed investigate the matter thoroughly and reported his findings to the Court. That investigation revealed that the prosecution did not review the information that the victim[']s brother attempted to provide to them, and that the defendant had not been prejudiced by Mr. Ashe's actions. This issue has been fully and completely examined, and this Court finds no merit in this claim.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Recently, our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

4

On claims of ineffective counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). On appeal, any findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderates against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Questions concerning the credibility of witnesses and weight and value to be given their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

Initially, the trial court determined that the issue of the stolen notes had been previously determined on the motion for new trial. Additionally, the petitioner was unable to prove any link between the state's identification of Hurst as a witness and the stolen notes. Moreover, the opinion on direct appeal documents the fact that the petitioner complained of his trial counsel's ineffectiveness on a number of grounds, including the failure to file pretrial motions under Rule 12, Tenn. R. Crim. P. Wampler, slip. op. at 10. Most importantly, however, the evidentiary hearing supports the findings of fact by the trial court that the petitioner was effectively represented both at trial and on direct appeal. Thus, the evidence does not preponderate against the findings of the trial court.

Next, the petitioner argues that his counsel was ineffective for having failed to raise the issue of juror misconduct. After one and one-half hours of deliberations, the foreman of the jury sent the following note to the trial judge:

> One of the jurors possibly knows one of the witnesses.
> He says it probably will affect his decision. The witness
> is Christine Gregory. The juror is Robert Ellison.

The petitioner contends that by allowing juror Ellison to continue, the trial court deprived him of a fair and impartial jury and permitted a non-unanimous verdict. U.S. Const. amend. XIV; Tenn. Const., art. I, § 8; Tenn. R. Crim. P. 31.

The trial court found as follows:

> When the Trial Court received the note[,] the
> Judge apprised both the prosecution and defense
> lawyers of its[] contents. Mr. Smith, defendant's trial
> counsel, moved the Court for a mistrial at that point. The
> Trial Court denied defense counsel's request for a
> mistrial and re-instructed the jury on the standard closing
> instruction in which he told them that nothing but the law
> and the evidence could have any influence on their
> verdict. The jury continued deliberations and shortly
> returned a verdict of guilty.
>
> Following the jury verdict Mr. Jennings, the
> prosecutor, and Mr. Smith interviewed the jury foreman
> and the juror who had raised the possibility that he knew
> one of the witnesses. Both of those individuals assured
> Mr. Smith and Mr. Jennings that the jury verdict had not
> been tainted .... Those interviews were tape recorded
> and transcribed and are part of the record in this case.
> This Court is convinced that trial counsel acted
> appropriately under the circumstances, and that no
> prejudice was suffered by the defendant. Therefore this
> Court finds no merit to this issue.

After the trial, juror Ellison testified that his decision was based solely on the facts presented at trial and that he was not influenced by his connection between the witness, Christine Gregory (who testified she saw the petitioner in possession of about $1,000.00 in cash and two gold chains on the night after the murder), and a cousin of the juror's wife by the same name. The jury foreman,

6

Marshall Conner, confirmed the veracity of juror Ellison's testimony. At the evidentiary hearing, Attorney Bell testified that he considered the question a non-issue and without merit as a possible ground on appeal.

Juror disqualifications are based upon either (1) propter defectum or (2) propter affectum. Partin v. Henderson, 686 S.W.2d 587 (Tenn. App. 1984). Objections based on general disqualifications, such as familial relationship, are within the propter defectum class and as such, must be challenged before a verdict. Id. at 589. In contrast, disqualification based on propter affectum exists due to some bias or partiality toward one party in the litigation. Id.; Toombs v. State, 270 S.W.2d 649, 651 (Tenn. 1954). Propter affectum objections may be made after the return of the jury verdict. Id.; Durham v. State, 188 S.W.2d 555, 557 (Tenn. 1945). Because the defendant claims bias or partiality in favor of the state, this is a case of propter affectum. State v. Furlough, 797 S.W.2d 631, 652 (Tenn. Crim. App. 1990).

The trial court found as a matter of fact that juror Ellison had not been affected during the deliberation by his knowledge of Ms. Gregory. There is nothing in the record to indicate that the alleged bias affected the verdict in any way. Because the evidence does not preponderate against that conclusion, we find no merit to the claim.

The petitioner also claims that juror Ellison's bias toward witness Gregory denied him a unanimous verdict. The circumstances here, however, are vastly different from those in State v. Shelton, 851 S.W.2d 134 (Tenn. 1993), where proof of multiple offenses was presented to the jury from which the jurors were left to choose independently upon which offenses to convict. Juror Ellison testified that his verdict of guilty was based on the facts and not any opinion he held toward one

7

of the witnesses. The state offered proof of one murder and one robbery. There was no requirement that the state make an election and, therefore, no lack of unanimity. See also Schad v. Arizona, 501 U.S. 624 (1991) (a jury need not agree on which overt act, among several possible alternatives, was the means by which a crime was committed).

Finally, the petitioner complains that his counsel was ineffective at trial and on appeal for failing to argue that the proof was insufficient to support first degree murder in the context of the jury charges on premeditation and deliberation. See State v. West, 844 S.W.2d 144 (Tenn. 1992). He argues that the circumstantial evidence could have been just as easily interpreted as a killing "in the heat of passion" and, therefore, a lesser degree of homicide. The petitioner also suggests that the jury instructions, which provided that "passion does not always reduce the crime below first degree" were improper and should have been challenged at trial and on appeal.

The trial court concluded that the instructions as to premeditation and deliberation, given prior to the decision in State v. Brown, 836 S.W.2d 530 (Tenn. 1992), accurately reflected the law at the time of the offense. See Lofton v. State, 898 S.W.2d 246 (Tenn. Crim. App. 1984). In this appeal, the petitioner does not dispute that ruling. Instead, he argues that the jury instruction on passion was improper, claiming that "the jury must have been able to find that the [petitioner] acted without passion." State v. Bullington, 532 S.W.2d 556 (Tenn. 1976).

The instructions, in pertinent part, included the following:

> The mental state of the accused at the time he allegedly instigated the act, which resulted in the alleged death of the deceased must be carefully considered, in order to determine whether the accused was sufficiently

8

free from excitement and passion to be capab[le] of premeditation.

Passion does not always reduce the crime below murder in the first degree, since a person may deliberate, may premeditate, and may intend to kill, after premeditation and deliberation, although prompted and, to a large extent, controlled by passion at the time.

If the design to kill was formed with deliberation and premeditation, it is immaterial that the accused may have been in a passion or excited state when the design was carried into effect.

The elements of premeditation and deliberation may be inferred from the circumstances of the killing. McGill v. State, 475 S.W.2d 223 (Tenn. Crim. App. 1971). The act must have been formed with a cool purpose, deliberately conceived in the mind of the accused, in order to rise to the level of murder in the first degree. Bullington, 532 S.W.2d at 559. If, however, the purpose was conceived "in the heat of passion, the accused, to be guilty of first degree murder, must have committed the act after the passion subsided." Id. In our view, the jury instructions, as a whole, provided the proper standard at the time of trial. The instructions explain that, so long as the mind was free of passion when the intent to kill was formed, passion during the act does not reduce the murder from first degree. Moreover, appellate counsel did challenge the sufficiency of the evidence as an issue on direct appeal. In the opinion on direct appeal, this court specifically addressed the question and concluded that the proof met the requirement of Rule 13(e), Tenn. R. App. P. This issue has no merit.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

9

CONCUR:


_____
Norma McGee Ogle, Judge


_____
John K. Byers, Senior Judge

10