IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2000 Session

## ROBERT A. MALLARD, DECEASED, ET AL.
## v. THOMAS E. TOMPKINS, M.D., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 98C-870     Thomas W. Brothers, Judge**

---

**No. M2000-00162-COA-R3-CV - Filed October 5, 2000**

---

The trial court entered judgment on a jury verdict for the defendant. The plaintiff argues on appeal that the trial court committed reversible error by failing to exclude from the jury a woman who revealed that she knew some members of the defense attorney's family. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

David W. Piper, Woodbury, Tennessee, for the appellants Robert A. Mallard, Deceased, and Myrtle Mallard Oldham.

Thomas A. Wiseman, III and Margaret J. Moore, Nashville, Tennessee, for the appellees, Thomas E. Tompkins, M.D.; Nashville Orthopaedic Associates, P.A., d/b/a Tennessee Orthopaedic Associates, P.A.; and a/k/a Tennessee Orthopaedic Alliance, P.A.

## OPINION

### I. TRIAL AND VERDICT

In 1995, Robert Mallard and his wife Myrtle brought a medical malpractice suit against Mr. Mallard's orthopedic surgeon, the surgeon's practice group, and Baptist Hospital. They claimed that negligence by the defendant surgeon during the replacement of Mr. Mallard's artificial knee joint caused him to suffer circulatory problems that ultimately resulted in the amputation of his leg. The plaintiffs took a voluntary non-suit on March 27, 1997. Robert Mallard died the following year from unrelated causes. His widow refiled the malpractice complaint on March 27, 1998. Baptist Hospital was dismissed by an agreed order on May 28, 1999.

The trial of the case began on October 4, 1999. After the jury returned a verdict for the defendants, the plaintiff filed a Motion for New Trial. In her motion, she claimed that the jury in this case was constitutionally defective, because it was tainted by the likelihood of bias or prejudice on the part of one of the jurors. The trial judge heard argument on the motion, but he denied the Motion for New Trial. He also sua sponte directed a verdict for the defendant, on a finding that no reasonable jury could find in favor of the plaintiff, and that the evidence preponderated in favor of the defendant. This appeal followed.

## II. VOIR DIRE

The plaintiff's problems began on the first day of voir dire, when her attorney handed up a list of four peremptory challenges to jurors he wished to exclude. The list was hand-written and used only the last names of the challenged jurors. The fourth name was undecipherable, but the trial judge thought he could make it out, and printed the name that he mistakenly believed it to be. After returning the challenge slips to the attorneys, he announced the names of the four jurors to be struck. As a result, one juror that the plaintiff wanted on the panel was excluded, and one that she wished to exclude was allowed to remain. However the plaintiff's attorney did not bring the error to the attention of the court until the end of the first day's proceedings, and the trial judge declined to grant him an additional peremptory challenge.

Voir dire had begun with thirteen prospective jurors in the jury box, and seven others on a bench behind the counsel table for the plaintiffs. Another twenty prospective jurors were seated in the back of the courtroom. The trial judge instructed the attorneys to address their questions to those in the jury box and behind the counsel table. Those in the back of the courtroom were not required to answer the questions posed by the attorneys. The attorneys asked whether the prospective jurors knew any of the parties or their attorneys.

Jennifer Murphy had been seated in the back of the courtroom during the first day. She was called to the jury box the following day, and another attorney resumed questioning on behalf of the plaintiff. He asked her whether she could be fair to both sides, and she answered that she could. He also asked whether she had friends or family members who were physicians. Ms. Murphy was not asked if she knew the parties or their attorneys. She was eventually chosen for the jury and sworn in.

After the plaintiff's attorney completed his opening argument, Ms. Murphy sent a note up to the judge, revealing that she knew some family members of one of the attorneys involved in the case. The judge called a jury-out hearing, in which he and the attorneys for both sides questioned Ms. Murphy. She stated that she knew the parents of Thomas Wiseman III, the defendant's lead attorney. She also revealed that she and his wife belonged to the same church, and that she had played tennis with his sister a few days earlier. She explained that she did not come forward earlier with this information because she was not asked, and she was not sure that it was relevant. She said that she did not know Mr. Wiseman himself, and he said that he did not know her personally.

Mr. Wiseman asked Ms. Murphy whether, despite her connections with his family, she could listen to the evidence and be a fair and impartial juror. She responded "I'd like to think that I could, yes." At this point, the plaintiff's attorney moved that she be dismissed for cause. The judge said that her answer was not sufficient, and he questioned her further about whether she could judge the case impartially. She unequivocally answered that she could, and the judge denied the plaintiff's motion. Ms. Murphy was ultimately elected foreperson of the jury that returned the verdict for the defendant.

## III. Appeal

### a. Peremptory Challenge

The appellant argues that the trial court erred by striking the wrong juror, and then by refusing to grant an additional peremptory challenge to replace the one that was erroneously exercised. We believe, however, that the attorney waived this objection by failing to bring it to the court's attention in a timely fashion.

The appellant's brief recites that only twelve seconds elapsed between the time the Court officer returned the challenge slips and the time the last challenged juror was dismissed. But even if the plaintiff's attorney could not react quickly enough to prevent the trial court from striking the wrong juror, he could have informed the judge of his error as soon as he became aware of it. A party is not entitled to relief for an error for which the party is responsible. Rule 36(a), Tenn. R. App. P..

### b. An Unbiased Jury

The constitutional right to a jury trial necessarily implies the empaneling of an unbiased jury, and bias may result from a juror's association with a party or a party's attorney.

> "The courts have . . . excluded from service, as subject to bias, those whose intimate associations, experiences, and contingent interests, financial or social, were such as to warp or sway, in prejudice or passion, the judgment in the case on trial, in response to those natural and human instincts common to mankind."

*Durham v. State*, 188 S.W.2d 555, 559 (Tenn. 1945).

The case of *Hyatt v. State*, 430 S.W.2d 129 (Tenn. 1967) involved a prosecution for bootlegging. During jury deliberations, one juror discovered that one of the defendants was the same woman against whom he had once procured a search warrant. The juror's son-in-law had been hauling white whisky for her, and he wished to put a stop to it. The defendant had been going by a different name when the juror swore out the warrant, and he did not recognize her at trial. The Supreme Court reversed the jury verdict because the record supported a finding that the juror was hostile to at least the one defendant.

Even without a showing of actual bias, a juror's failure to truthfully answer questions about the juror's association with a party, a witness, or one of the attorneys may raise a presumption of bias. In *Tennessee Farmers Mutual Insurance v. Greer*, 682 S.W.2d 920 (Tenn. Ct. App. 1984) the potential jurors were asked on voir dire if they or any members of their families might know or might be related to any of six named witnesses. No potential juror gave an audible answer to the question. During the course of the trial, the chancellor became aware that one of the jurors was familiar with a witness because her son worked with him, but the chancellor did not let the attorneys know about this fact. On appeal, this court noted that deliberate withholding of information amounts to false swearing, and raises a presumption of bias and partiality. We found that the trial court committed reversible error by not informing the attorneys about the juror's relationship to the witness, and by failing to take whatever action was necessary to insure a fair and impartial jury.

In *Lewis v. Pendergrass*, No. 03A01-9510-CV-00369 (Tenn. Ct. App. at Knoxville, filed April 3, 1996), potential jurors were asked if they had ever been represented by the plaintiffs' attorney. One juror had in fact been recently involved in a client/attorney relationship with the plaintiffs' attorney, but after the question was asked he remained silent. The plaintiffs prevailed, and the defendants raised the issue of the juror's relationship with the attorney on Motion for New Trial. The trial court subpoenaed the juror, who denied any partiality, and testified that he did not remember the defendants' attorney asking whether plaintiffs' attorney had ever represented him. The trial court denied the Motion for New Trial, but was reversed by this court, which stated that "[w]e do not believe that the presumption created by the false swearing of the juror was overcome."

In *Toombs v. State*, 270 S.W.2d 649 (Tenn. 1954), two defendants were convicted of theft of personal property that was owned by a Mr. Hartman. On appeal, they argued that the jury was biased because one of the jurors was the first cousin of Mr. Hartman's wife, and the two families had close and friendly relations, facts that did not come to light until after the trial was over.

The Supreme Court initially determined that as a matter of public policy, the defendants were not entitled to a new trial, because the juror was not asked during voir dire if he was related to any of the parties in the litigation. After the defendants filed a Petition to Rehear, the Court reversed itself, reasoning that since the potential jurors were asked if there were any reason that they could not give both sides a fair trial, the juror's silence about the relationship raised a presumption that he had an ulterior motive for remaining silent, which stemmed from a partiality in favor of the prosecution.

Like the juror in the *Toombs case*, Ms. Murphy was asked if she could be fair to both sides, but was not asked about any relationship she might have to any of the parties involved in the litigation. In the *Toombs* case, however, as in the other cases we discussed above, the information from which the presumption of partiality arose was not disclosed until after the jury reached its verdict. Thus there was no opportunity for the defense attorney to challenge the juror for cause, or to ask questions that might confirm or refute the presumption of bias.

-4-

In the present case, Ms. Murphy voluntarily revealed her connections with Mr. Wiseman's family after the jury was sworn, but before trial and deliberations, because she "felt guilty" about her earlier silence. The attorneys and the court had the opportunity to ask her questions about the nature and depth of the relationship, and explore her reasons for not volunteering the information earlier. The judge considered the motion to dismiss her for cause, but overruled it, because he was satisfied that she would be able to render an impartial verdict.

The present case more closely resembles *Carney v. Coca-Cola Bottling Works of Tullahoma*, 856 S.W.2d 147 (Tenn. Ct. App. 1993), than it does any of the cases cited by the appellant. In *Carney*, this court reviewed a trial court's refusal to excuse a juror for cause. The defendant had used all its peremptory challenges before the juror revealed that her husband had worked for the plaintiff's family for twenty years. The defendant's attorney was allowed to question the juror at length, after which the judge overruled the motion.

We ruled that whether friendship or personal acquaintance with one of the parties results in disqualification depends on the facts of each case, and that the ultimate determination is within the discretion of the trial court. 856 S.W.2d at 149. We have reviewed the original voir dire of Ms. Murphy as well as the questioning that occurred after she revealed her relationship with members of Mr. Wiseman's family, and we are convinced that the trial court did not abuse its discretion in overruling the plaintiff's challenge for cause.

### c. Other Issues

Mrs. Mallard's attorney filed a Motion for a Continuance two weeks before the trial was scheduled to begin. He argued that he needed additional time to either find a particular x-ray of Mr. Mallard's leg that he claimed would support his theory of negligence, or to explore the reason that Baptist Hospital said the x-ray had been destroyed. The trial court denied the motion. Appellant argues here that the trial court's denial of the Motion for Continuance constitutes reversible error.

The appellant failed to raise this issue in the Motion for New Trial, however, and it therefore must be deemed to have been waived, under Rule 3(e) of the Rules of Appellate Procedure, which reads in pertinent part,

> In all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived.

But even if Mrs. Mallard had raised the issue of the continuance in her Motion for New Trial, we do not believe she would be entitled to prevail on appeal. The decision of a trial court to grant or deny a continuance is within the court's discretion, and will not be reversed absent a clear

showing of abuse of that discretion. *Russell v. Crutchfield*, 988 S.W.2d 168 (Tenn. Ct. App. 1998). In view of the interest of our court system in resolving cases as quickly and expeditiously as possible, and of the fact that the appellant did not even request copies of the more than four-year-old x-rays until a few weeks prior to trial, we do not think that the trial court abused its discretion in refusing the continuance.

Appellant also argues that it was error for the trial court to grant a directed verdict to the defendants, without a renewed motion for directed verdict having been filed in accordance with the Tennessee Rules of Civil Procedure. *See* Rule 50.01. She contends that the trial court's action was an attempt to prevent her from obtaining a new trial, in the event that this court or the Supreme Court determined that the jury that was empaneled was constitutionally defective. Since we have not found the jury to be defective, this argument has become irrelevant, and we need not rule on it.

## IV.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Myrtle Mallard Oldham.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.