IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2002 Session

## JACKIE D. DILLARD v. MEHARRY MEDICAL COLLEGE, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 95C-3712    Hamilton V. Gayden, Jr., Judge**

_____

**No. M2001-02038-COA-R3-CV - Filed July 9, 2002**

_____

The jury returned a verdict for the defendant surgeon and hospital in this medical malpractice action. The plaintiff argues on appeal that the trial court committed reversible error at several stages of the trial, including jury selection, witness testimony and jury instructions. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and D. MICHAEL SWINEY, JJ., joined.

Ann Buntin Steiner, Nashville, Tennessee, for the appellant, Jackie D. Dillard.

Bryan Essary, Nashville, Tennessee, for the appellee, Meharry Medical College.

E. Reynolds Davies, Jr. and John T. Reese, Nashville, Tennessee, for the appellee, Reginald Coopwood, M.D.

### OPINION

### I. GALL BLADDER SURGERY AND A MALPRACTICE COMPLAINT

On November 7, 1994, Jackie Dillard was admitted to Metropolitan General Hospital in Nashville with symptoms of abdominal pain. She was diagnosed with gallstones, and scheduled the same day for surgical removal of her gall bladder (cholecystectomy). Reginald Coopwood, M.D., performed the surgery, using a laparoscopic procedure: that is, one involving small incisions in the abdomen into which the surgeon inserts and manipulates a miniature television camera and small surgical tools. Dr. Coopwood was assisted by William Garrett, M.D. During the operation, Ms. Dillard's common bile duct was severed in two places, resulting in pain and suffering, additional surgery, and potential long-term damage to her liver.

Ms. Dillard filed a malpractice complaint on November 2, 1995, which included a claim by her husband for loss of consortium. Drs. Coopwood and Garrett were named as defendants. Meharry Medical College and the Metropolitan Government of Nashville and Davidson County were also named, under the doctrine of respondeat superior. Ms. Dillard claimed that Dr. Coopwood had initially misidentified her common bile duct (which is supposed to be protected during this operation) believing it to be the cystic duct (which is normally ligated); that as a result, he ligated and cut the common bile duct; that he failed to perform a cholangiogram, an x-ray that would have enabled him to properly identify the anatomy of the surgical area; that because he failed to diagnose the injury he caused, he cut the common bile duct a second time; and that he failed to convert from a laparoscopic procedure to an open one, in order to repair the damage.

The trial court dismissed Metro Government from the lawsuit on March 4, 1996. Mr. Dillard voluntarily non-suited his claim on November 18, 1997. Dr. Garrett was non-suited without prejudice on September 19, 2000. A five-day trial against the Dr. Coopwood and Meharry Medical College began on March 5, 2001.

Both parties introduced expert testimony to support their respective positions. Dr. Kelly Wright, the liver transplant surgeon who repaired the damage to Ms. Dillard's biliary system, appeared for the plaintiff. He testified that Dr. Coopwood had violated the standard of care by making a second cut on the common bile duct, despite uncertainty about the correct identification of the biliary structures visible on his laparoscope. Dr. Charles Herbst, a retired gastrointestinal surgeon from North Carolina, testified that under the circumstances of this case, the standard of care required the use of a cholangiogram.

General Surgeon Dr. Robert Ikard appeared for the defendants. He testified that Dr. Coopwood had met the standard of care, and that inadvertent injury to the common bile duct was a recognized (although rare) complication of cholecystectomy, and that although it was slightly more common in laparoscopic procedures, open procedures carried other risks. He also testified that cutting the common bile duct a second time did not increase the risk or worsen the damage Ms. Dillard suffered, and that the standard of care in 1994 did not require intraoperative cholangiography prior to cutting duct structures.

Following closing arguments, the jury returned a verdict for the defendants. The trial court entered a judgment in accordance with the verdict on March 15, dismissing the action. Ms. Dillard filed a Motion for New Trial on April 12, in which she argued that the trial court had erred in numerous ways, including not dismissing two jurors for cause who were acquaintances of the defense counsel, admitting misleading testimony offered by the defendant doctor, and giving erroneous jury instructions.

On April 16, defendant Meharry Medical College filed a Motion for Discretionary Costs, asking the court to charge the plaintiff with $5,000 of such costs. An itemized and verified bill of costs listed $4,229 in fees charged by Dr. Ikard for trial preparation and trial testimony. The plaintiff's attorney subsequently filed an Amended Motion for New Trial. She argued that the fee

Dr. Ikard received for testifying constituted newly discovered evidence, justifying a new trial. On August 13, 2001, the trial court denied the plaintiff's Motion for New Trial and the defendant's Motion for Discretionary Costs. This appeal followed.

## II. JURY SELECTION

Ms. Dillard's attorney argued on appeal that errors by the trial judge forced her to waste her peremptory challenges, resulting in a jury that was skewed against her client's interest. The factual predicate for this claim arose when the members of the jury venire were asked if they knew any of the parties or their attorneys. Two potential jurors answered that they did.

Both knew defense attorney Reynolds Davies, and one knew defense attorney Jack Reese as well. Further, one juror testified that he considered Mr. Davies to be his friend, and that he and his family saw the Davies family socially three or four times a year. The other testified that he and Mr. Davies had been in school together at Montgomery Bell Academy, but that he didn't see the attorney very often.

Ann Buntin Steiner, the plaintiff's attorney, asked both potential jurors if they would feel strange if they had to rule on a case where Mr. Davies represented one of the parties, and they said they would not. The trial judge also asked them if they could be fair to both sides despite their acquaintanceship with Mr. Davies, and they both indicated that they could. At the conclusion of voir dire, the plaintiff's attorney moved the court to dismiss the two jurors for cause, but the judge refused. Ms. Steiner then used two of her peremptory challenges to remove them from the jury.

It is a basic principle of the jury system that a litigant is entitled to a jury composed of persons free from bias or prejudice. *Wolf v. Sundquist,* 955 S.W.2d 626, 629 (Tenn. Ct. App. 1997); *Durham v. State*, 188 S.W.2d 555 (Tenn. 1945). Upon learning of friendship or personal acquaintanceship between a prospective juror and one of the parties or attorneys in a case, further questioning of the juror is a necessary step to determine whether he or she can deliberate on the case without bias. The judge in this case questioned the two prospective jurors on the possibility of bias, and determined that they need not be excluded for cause.

The plaintiff's attorney correctly points out that challenges for cause should be granted in all circumstances where bias exists, not only those where the juror recognizes and acknowledges his bias. *See State v. Morris*, 24 S.W.3d 788 (Tenn. 2000). She argues that both prospective jurors gave equivocal answers to questions about possible bias. Specifically, when asked whether his acquaintance with attorney Reynolds Davies would affect his ability to be fair to both sides, one juror answered, "I don't believe so." The other, when asked if he thought he could be fair to both sides, said, "I think so."

The ultimate determination on the question of juror bias remains within the sound discretion of the trial court. *Mallard v. Tompkins*, 44 S.W.3d 73 (Tenn. Ct. App. 2000); *Carney v. Coca-Cola Bottling Works of Tullahoma,* 856 S.W.2d 147 (Tenn. Ct. App. 1993). One reason the trial judge

is afforded such discretion is that he or she is able to observe the demeanor of the potential juror as he answers questions about possible bias, and is thus in a better position than the reviewing court to evaluate the answers. *Carney v. Coca-Cola Bottling Works of Tullahoma, supra.* While the two challenged jurors did not answer as firmly as the plaintiff's attorney thought was required, we believe that the trial court did not abuse its discretion when it declined to dismiss them for cause.

Further, one important distinction between this case and other cases in which the alleged bias of jurors was an issue on appeal is that the two challenged jurors in this case did not actually serve on the jury. As we stated above, Ms. Steiner was able to eliminate them by using two of her peremptory challenges.

At a later point in the jury selection process, the court recessed, and when the jury venire returned, two of its members had changed seats. The plaintiff's attorney claims that as a result she used her last remaining peremptory challenge against the wrong juror, and that although she brought her error to the attention of the trial judge in a timely way, he refused to grant her an additional peremptory challenge. She was thus unable to eliminate one juror that she found objectionable.[1]

During oral argument, Ms. Steiner was asked what evidence she had that the jury that was finally selected was biased against her client. She could only say that she felt that her initial instinct was correct, and that the one juror she was unable to eliminate on peremptory challenge turned out to be against her client. We have no way of evaluating her statement, but we do not believe that she has established a sufficient basis to overturn the jury verdict.

### III. A MOTION TO STRIKE

The defense counsel asked Dr. Coopwood on direct testimony how many laparoscopic cholecystectomies he had performed prior to operating on Ms. Dillard. He answered that it was somewhere between 80 and 120. The attorney then asked the doctor whether he had ever cut the common bile duct during any of these operations. Dr. Coopwood answered in the negative.

Ms. Steiner stated on appeal that she had wanted to object to the testimony as being in violation of the Tennessee Rules of Evidence, but withheld her objection because of the lateness of the hour. The following day, she attempted to introduce into evidence seven malpractice complaints that had been filed against Dr. Coopwood. After a jury-out hearing, the judge declined to allow her to introduce the allegations in those complaints. Ms. Steiner then moved that Dr. Coopwood's

---

[1] The defendant argues that there is no proof in the record that Ms. Steiner had used up all her peremptory challenges. After oral argument in this case, the plaintiff's attorney filed a Motion to Supplement the Record with the trial judge's jury seating list and peremptory challenge list, two documents which on their face indicate that she used all the peremptory challenges she was permitted. The defendant responded by arguing that the motion should be denied because the documents lacked proper authentication. We reserved our ruling, pending this opinion. Since we do not believe that the plaintiff is entitled to reversal of the jury verdict, regardless of whether her attorney used up all her peremptory challenges, we find it unnecessary to rule on her motion.

response to his attorney's question the day before be stricken. The trial court again declined to grant her motion.

Ms. Steiner argues that the trial judge's refusal to strike Dr. Coopwood's answer constituted reversible error because Rule 404 of the Tennessee Rules of Evidence declares that "evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion." Rule 404 goes on to say, however, that such evidence may be admissible for other purposes, so long as its probative value is not outweighed by the danger of unfair prejudice.

While it may be something of a stretch to characterize a doctor's prior surgical results as character evidence, there is some validity to the argument that the evidence was presented for the inadmissible purpose of proving that Dr. Coopwood was a careful surgeon. Defense counsel contends, however, that Dr. Coopwood's testimony was admissible under Rule 404, because it was presented to prove the validity and efficacy of the doctor's surgical method for identifying the anatomy of the biliary area, a method which had been earlier criticized as deficient by the plaintiff's expert witnesses.

We note that decisions as to the admissibility of evidence (like decisions on jury selection) are within the sound discretion of the trial judge. *Overstreet v. Shoney's*, 4 S.W.3d 694 (Tenn. Ct. App. 1999). We also agree with defendant's argument that the plaintiff waived any possible objection to Dr. Coopwood's statement by failing to state her objection in a timely way. Rule 103(a)(1) of the Tennessee Rules of Evidence declares that error may not be predicated upon a ruling which admits evidence, unless a timely objection or motion to strike is made. *See Wright v. United Services Automobile Association*, 789 S.W.2d 911, 914 (Tenn. Ct. App. 1990). Before raising her motion to strike, the plaintiff's attorney waited until the following day, and until after the trial court declined to allow her to introduce allegations of malpractice made in other cases.

It is well-established that a party must complain and seek relief immediately after the occurrence of a prejudicial event, and may not save an infirmity in the proceedings as an "ace in the hole" to be used in the event of a later unfavorable decision. *Harwell v. Walton* 820 S.W.2d 116 (Tenn. Ct. App. 1991); *Gotwald v. Gotwald,* 768 S.W.2d 689 (Tenn. Ct. App. 1988). We therefore do not believe that the trial court abused its discretion by declining to grant the plaintiff's Motion to Strike Dr. Coopwood's testimony.

## IV. JURY INSTRUCTIONS

The plaintiff's attorney argues that several portions of the instructions that the trial judge delivered to the jury are contrary to the controlling law. Before we discuss her arguments, we must note that a particular instruction must be considered in the context of the entire jury charge, *Johnson City v. Outdoor West,* 947 S.W.2d 855 (Tenn. Ct. App. 1996), and that the charge will not be invalidated if it fairly defines the legal issues involved in the case, and does not mislead the jury. *Otis v. Cambridge Mutual Fire Insurance Company*, 850 S.W.2d 439 (Tenn. 1992).

The trial court instructed the jury that "[t]he duty of a physician is to exercise his best judgment regarding treatment, and he is not guilty of medical malpractice if he chooses a course of treatment supported by other physicians in good standing." Ms. Steiner notes that the Tennessee Medical Malpractice Act requires physicians to act with ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice in their profession and specialty. *See* Tenn.Code.Ann. § 29-26-115. She argues that it is erroneous to imply that a doctor cannot be found guilty of malpractice if he simply proves that other doctors may have chosen the same course of treatment that he did.

Ms. Steiner's statement of the law is correct, but her discussion of the jury instructions is incomplete. The trial transcript reveals that the trial judge fully explained the elements of a malpractice claim in accordance with Tenn. Code. Ann. § 29-26-115, and the plaintiff's burden of proving each of those elements by a preponderance of the evidence. While the challenged instruction standing alone would be misleading, it is not so within the context of the entire instruction given by the court.

The plaintiff's attorney also objects to the judge's instruction that "foresight, not hindsight is the standard by which one's duty of care is to be judged." This instruction is consistent with Tennessee negligence law in general, *see Doe v. Linder Construction Co.*, 845 S.W.2d 173 (Tenn. 1992), as well as with the form of negligence called malpractice. *Alessio v. Crook*, 633 S.W.2d 770, 775 (Tenn. Ct. App. 1982). In malpractice cases, the standard of care against which the actions of a defendant doctor are measured is, "[t]he recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community <u>at the time the alleged injury or wrongful action occurred.</u>" Tenn. Code. Ann. § 29-26-115(a)(1) (emphasis added).

Finally, the plaintiff's attorney objects to the trial court's use of the expression "honest mistake" in the following instructions:

> A physician does not guarantee the cure of his patients, but after a careful diagnosis, a physician is not liable for damages to his patient from an honest mistake in determining the character of treatment to be administered or in determining the necessity of an operation.

> A physician will not be held liable for honest mistakes in judgment but only for negligence, negligent failure to meet the standard required by the profession in the community.

> A physician does not guarantee the cure of his patients. Presuming careful diagnosis, a physician is not liable for damages resulting from an honest mistake in determining the character of treatment to be administered.

Plaintiff's attorney directs our attention to a case from another jurisdiction, *McKinnis v. Women and Infants Hospital of Rhode Island*, 749 A.2d 574 (Rhode Island 2000), which criticizes the use of terms such as "honest mistake" and "bona fide error" in jury instructions dealing with medical malpractice, because they defy rational definition. Although this court has previously upheld jury instructions almost identical to the above quotation, *Patton v. Rose*, 892 S.W.2d 410, 415 (Tenn. Ct. App. 1994), we agree that "honest mistake" has the potential for being misleading, because in the context of the law of medical malpractice, a doctor can be negligent without being dishonest.

In the *McKinnis* case, the Rhode Island Supreme Court found the entire jury instruction to be inadequate and misleading, not merely the "honest mistake" language. The court reversed the verdict for the defendant primarily because the trial judge never gave the jury an adequate explanation of negligence, but only described various factual and legal scenarios in which negligence was found not to lie against medical defendants. During its deliberations, the jury asked for clarification on the definition of negligence for doctors and nurses, but were rebuffed by the judge. In contrast, the judge in the case before us gave the jury a full explanation of the elements of negligence under the medical malpractice statute. Thus, even if the judge's use of the challenged term was in error, in the context of the entire jury charge, it has to be considered harmless.

## V. THE AMENDED MOTION FOR NEW TRIAL

Ms. Steiner asked Dr. Ikard at the beginning of his testimony whether he was charging a fee for reviewing the records and serving as an expert in this case. Dr. Ikard answered that he was. The plaintiff's attorney then asked him his rate of compensation and how much he had charged to date. Dr. Ikard answered that he did not know. Under cross-examination, he was asked if he charged $525 per hour for giving his deposition, and he again answered that he didn't know, explaining that he doesn't do the billing. Under close questioning, he admitted that he was a personal friend of Ed Davies, one of the defense attorneys, and that he had testified several times in cases where Mr. Davies was the attorney.

During his closing argument, Mr. Davies referred to the fees Dr. Wright and Dr. Herbst received for their court appearances, and used the expressions "hired witnesses" and "paid witnesses," and "big fees for testifying," thus implying that their testimony should not be given credence. In speaking of his own witness, Mr. Davies said that "Dr. Ikard doesn't have to come here to defend Dr. Reginald Coopwood, Dr. Ikard doesn't need the money." Ms. Steiner argues that these statements misled the court and the jury, and that the newly discovered evidence as to Dr. Ikard's $4,429 fee constitutes grounds for a new trial.

We note that the plaintiff's attorney had the opportunity to impeach the testimony of Dr. Ikard in regard to his fee, and that she managed to do that to some extent. Further, she began her closing argument by addressing the question of Dr. Ikard's fees and his relationship to Mr. Davies. She told the jury that Dr. Ikard charged $525 per hour for giving his deposition, and reminded them of Dr. Herbst's testimony that he was donating his considerable fee to charity. Nonetheless, Ms.

Steiner contends that the discovery of the total amount of Dr. Ikard's fee constitutes newly discovered evidence, justifying the grant of her Motion of New Trial.

There are several problems with this argument. First, a new trial is not warranted on the basis of newly discovered evidence that goes to a collateral matter only. *Crain v. Brown*, 823 S.W.2d 187 (Tenn. Ct. App. 1991). Clearly, Dr. Ikard's fee is a collateral matter, which has very little to do with the primary issues in this case.

Second, it must be shown that the new evidence that is offered was not known to the moving party prior to trial, and could not have been known to her through the exercise of reasonable diligence. *Seay v. City of Knoxville*, 654 S.W.2d 397 (Tenn. Ct. App. 1983). It appears to us that the plaintiff could have discovered the amount of Dr. Ikard's fee prior to trial if she felt this fact to be of sufficient importance.

Third, a new trial can be granted on the basis of newly discovered evidence only when the introduction of such evidence at a subsequent trial would most likely result in a different outcome. *Wright v. Quillen*, 909 S.W.2d 804 (Tenn. Ct. App. 1995); *S.M.R. Enterprises v. Southern Haircutters*, 662 S.W.2d 944 (Tenn. Ct. App. 1983). In light of Ms. Steiner's opportunity to impeach Dr. Ikard, and to argue that like Dr. Wright and Dr. Herbst, he was also paid for his testimony, it seems highly unlikely that a jury's knowledge of the exact amount of his fee would lead to a different result.

Finally, when considering the matter of granting a new trial, the trial judge is vested with broad discretion. *Esstman v. Boyd*, 605 S.W.2d 237 (Tenn. Ct. App. 1979). Our courts do not favor the grant of a such a trial on the basis of newly discovered evidence, and look upon such motions with suspicion. *Brown v. University Nursing Home, Inc.*, 496 S.W.2d 503 (Tenn. Ct. App. 1972). The trial judge clearly did not abuse his discretion in declining to order a new trial.

## VI. THE MATERIAL EVIDENCE RULE

The appellant argues that we should grant her a new trial because the verdict was against the weight of the evidence. We needn't spend much time on this argument, because she is invoking the wrong standard of review. A jury verdict that has been approved by the trial court will not be reversed on appeal so long as there is material evidence in the record to support that verdict. Tenn. R. App. P. 13(d); *Washington v. 822 Corp.*, 43 S.W.3d 491(Tenn. Ct. App. 2000); *Poole v. Kroger Co.*, 604 S.W.2d 52 (Tenn. 1980). In the present case, the record contains competent expert testimony that the plaintiff's injury was not the result of malpractice. The jury was not obligated to believe this testimony, but it was entitled to do so. The plaintiff's argument is without merit.

## VII.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Jackie D. Dillard.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.