IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 28, 2003

## STATE OF TENNESSEE v. JAY CHAMBERS

**Appeal from the Criminal Court for Scott County**
**No. 7547      E. Shayne Sexton, Judge**

_____

**No. E2002-01308-CCA-R3-CD**
**March 25, 2004**
_____

The defendant, Jay Chambers, was convicted of one count of rape. The trial court imposed a Range I sentence of ten years. In this appeal, the defendant asserts that a former sheriff's deputy should not have been permitted to sit as a juror; that the trial court erred by permitting members of the jury to separate during a break; and that he was denied the effective assistance of counsel. Because the defendant's motion for new trial was untimely and the issues, even if meritorious, would not warrant a dismissal of the charge, the interests of justice do not require waiver of the timely filing of the notice of appeal. Accordingly, the appeal is dismissed.

### Tenn. R. App. P. 3; Appeal Dismissed

GARY R. WADE, P.J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. JOSEPH M. TIPTON, J., filed a concurring opinion.

John A. Beaty, Huntsville, Tennessee (on appeal), and Max Huff, Oneida, Tennessee (at trial), for the appellant, Jay Chambers.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; and Lori Jones and John W. Galloway, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

In December of 1998, the victim, fifteen-year-old A.H.,[1] visited the residence of her friends, Tammy and Robin Chambers, intending to spend the night. After changing into her pajamas, the victim, who had joined her friends on the porch to listen to music, began to dance. The defendant, who is the father of Tammy and Robin Chambers, had been drinking and asked to see the victim's breasts. The victim refused and later, as the victim lay on a trampoline with her friends "looking at the stars," the defendant rubbed her stomach. The victim pushed his hand away and demanded that

_____
[1]It is the policy of this court to withhold the identity of minor victims of sex crimes.

he stop. After the defendant returned to the interior of the house, Tammy and Robin warned the victim not to allow the defendant to touch her.

Later in the evening, the victim asked for beer and the defendant accommodated her request. According to the victim, she shared three beers with Tammy and Robin, drank two shots of tequila, and then smoked marijuana with the defendant, claiming that she thought it was a cigarette. At trial, the victim claimed that the defendant asked her to perform oral sex and she refused. The victim testified that she did not leave the residence following this encounter because she "figured [the defendant] was just drunk and would not try [any]thing." After going to sleep on a cot in the living room, the victim awoke upon experiencing a pain between her thighs and discovered that the defendant had penetrated her vagina. Her shirt and bra were pulled away and her pants and underwear were around her left ankle. The victim directed the defendant to stop but he had pinned her to the cot with his knee. According to the victim, the defendant told her not to worry because he was using a condom. When the defendant finished, he went to bed. The victim woke her friends and claimed that she had been raped. Because there was no telephone at the Chambers' residence, the victim went to a neighbor's house to call 911. After making a statement to police, the victim was taken to the emergency room and examined. The victim testified that later, Tammy informed her that Robin claimed that she was awake during the sexual assault and "heard everything."

Scott County Deputy Donnie Phillips, who responded to the call, described the victim as "crying, nervous and scared." After taking the victim's statement, Deputy Phillips arrested the defendant. The defendant, who smelled of alcohol and had slurred speech, denied having raped the victim.

At trial, Dr. Janet Wolfer, who examined the victim in the emergency room, testified that the victim complained of pain in her genital area, her upper abdomen, and her chest. In a pelvic examination, Dr. Wolfer found that the victim's vagina was swollen, red, and inflamed. Dr. Wolfer discovered a laceration to the vagina, which she described as "consistent with a forceful sexual episode." It was her opinion that the injuries could not have been caused by "normal non-violent sexual intercourse." A toxicology examination of the victim was negative for alcohol and marijuana.

Shay Silcox and Justin Gilreath, friends of the victim, testified as defense witnesses that the victim had given conflicting accounts of the offense. Ms. Silcox claimed that the victim denied being raped and Gilreath testified that the victim had informed him that the rape did not occur inside the defendant's residence.

The defendant's daughters, Tammy and Robin, also testified for the defense. Both denied either drinking or smoking marijuana on the night of the offense. According to Robin, the victim was angry with the defendant because he refused to give her any beer. Robin insisted that she was sleeping less than a foot from the victim and would have heard any assault. Similarly, Tammy contended that she slept only inches from the victim's head and heard nothing until the victim asked for the flashlight so that she could find her way to the outhouse. Tammy recalled that when the police arrived, she awakened her father, who was passed out on his bed, fully clothed.

On November 17, 1999, the defendant was convicted of rape. Five months later, the trial court imposed a sentence of ten years' incarceration. Approximately two weeks later, the defendant filed a notice of appeal. There was no motion for new trial. The defendant voluntarily dismissed his appeal in June of 2000. In November of 2000, he filed a pro se motion for new trial. Approximately sixteen months later, the defendant, through counsel, filed a second motion for new trial which was amended on the next day. A hearing was held on the motion for new trial on the following day. The defendant filed a second notice of appeal on April 29, 2002, and, in August of the same year, the trial court entered an order denying the motion for new trial.

I

Initially, the state argues that the motion for new trial was not timely filed. Tennessee Rule of Criminal Procedure 33(b) provides that a motion for new trial must be filed "within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory and may not be extended by the trial court. Tenn. R. Crim. P. 45(b); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). In consequence, a trial court has no jurisdiction to hear or determine the merits of an untimely motion for new trial. Martin, 940 S.W.2d at 569 (citing State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989); State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1981); Massey v. State, 592 S.W.2d 333, 334-35 (Tenn. Crim. App. 1979)). A motion for new trial which is not timely filed is a nullity. State v. Blunkall, 731 S.W.2d 72, 74 (Tenn. Crim. App. 1987) (citing State v. Lane, 689 S.W.2d 202 (Tenn. Crim. App. 1984); State v. Williams, 675 S.W.2d 499 (Tenn. Crim. App. 1984)). The trial judge's erroneous consideration of a motion for new trial not timely filed will not validate the motion. Martin, 940 S.W.2d at 569.

Because the untimely motion for new trial was a nullity, it cannot toll the thirty-day period for filing a notice of appeal. See State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987); State v. Timothy Wayne Henderson, No. 01C01-9801-CC-00001 (Tenn. Crim. App., at Nashville, Oct. 21, 1998). In consequence, the notice of appeal filed by the defendant in April of 2002, over two years after the imposition of sentence, is untimely. The timely filing of a notice of appeal is not, however, a prerequisite to the jurisdiction of this court. This court may waive the requirement in the interests of justice. Tenn. R. App. P. 4(a). Thus, the question is whether the interests of justice in these circumstances require waiver of the timely filing of the notice of appeal.

It is well-established that an appellate court may not consider the issues raised in an untimely motion for new trial unless they would result in dismissal of the case. See Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived"); Martin, 940 S.W.2d at 569 (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial); State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Here, the defendant has raised three issues on appeal. Two address the composition and activities of the jury and one addresses the effectiveness of his trial counsel. These issues, if decided in the defendant's favor, would warrant a new trial but would not result in dismissal of the case. Thus, the issues could

not be entertained on appeal due to the failure to file a timely motion for new trial. Tenn. R. App. P. 3(e); State v. Williams, 675 S.W.2d 499 (Tenn. Crim. App. 1984). Because the defendant has failed to raise any issue that would warrant dismissal, it is our view that the interests of justice do not require a waiver of the timely filing of the notice of appeal. Accordingly, the appeal is dismissed.

## II

Furthermore, the defendant would not have been entitled to relief on the merits of the issues. The defendant's first complaint of error is that he was denied the right to trial by a fair and impartial jury because juror David Terry, while employed as a deputy with the Scott County Sheriff's Department, had previously arrested him for a misdemeanor offense.

Tennessee Rule of Evidence 606(b), which authorizes only limited inquiry into the validity of a verdict through the questioning of jurors, provides that "a juror may testify on the question of whether extraneous, prejudicial information was improperly brought to the jury's attention" or "whether any outside influence was improperly brought to bear upon any juror . . . ." Tenn. R. Evid. 606(b). The term "extraneous information" may include a juror's personal knowledge of the defendant's prior criminal record or arrest, see Neil P. Cohen, et al., Tennessee Law of Evidence § 606.2 (3rd ed. 1995), and such information is deemed prejudicial if it has an influence on the verdict of the jury, see Patton v. Rose, 892 S.W.2d 410 (Tenn. Ct. App. 1994). While the defendant is entitled to a verdict untainted by extraneous, prejudicial information, the defendant bears the burden of establishing jury misconduct. State v. Blackwell, 664 S.W.2d 686 (Tenn. 1984). In this case, while the defendant asserts that a juror had prejudicial, personal knowledge of his prior criminal record, the defendant does not assert that the juror shared this information with the other members of the jury. Thus, the question is one of juror disqualification.

Generally, juror disqualifications are based upon one of two theories: (1) propter defectum ("On account of or for some defect." Black's Law Dictionary 1385 (Rev. 4th Ed. 1968)) or (2) propter affectum ("For or on account of some affection or prejudice." Id.). Partin v. Henderson, 686 S.W.2d 587 (Tenn. Ct. App. 1984). Objections based on general disqualifications, such as familial relationship, fall within the propter defectum class and, accordingly, must be challenged prior to the verdict. Id. at 589. In contrast, disqualifications based upon propter affectum exist due to some bias or partiality toward one party in the litigation and may be made after the verdict. Toombs v. State, 197 Tenn. 229, 270 S.W.2d 649, 651 (1954); Durham v. State, 182 Tenn. 577, 188 S.W.2d 555, 557 (1945); Partin, 686 S.W.2d at 589. Even in cases of propter affectum, challenges after the verdict are not proper unless the "'particular disqualification of a juror was unknown to the defendant and his attorney at the time of the jury's selection.'" Durham, 182 Tenn. at 582, 188 S.W.2d at 557 (quoting Monday v. State, 160 Tenn. 258, 23 S.W.2d 656, 658 (1930)); see also State v. Akins, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993) ("Thus, when a juror conceals or misrepresents information tending to indicate a lack of impartiality, a challenge may be made as here in a motion for new trial."). Because the defendant complains of bias or partiality in favor of the state, his claim is one of propter affectum. See State v. Furlough, 797 S.W.2d 631, 652 (Tenn. Crim. App. 1990).

Here, Juror Terry's affidavit establishes that he was a deputy from 1986 until 1992. At the time of the trial, Juror Terry had been out of law enforcement for some seven years. While acknowledging that he had arrested the defendant for a misdemeanor offense, Juror Terry stated that he did not remember the charge or whether the arrest led to a conviction. Juror Terry also acknowledged in his affidavit that it was possible that he had been involved in an investigation in which the defendant was a suspect but that he had no recollection of the subject matter. At the hearing on the motion for new trial, the defendant testified that Juror Terry had cited him for driving on a revoked license and had questioned him about a stolen van. The defendant contended that he informed trial counsel about his experience with Juror Terry but that trial counsel chose not to remove him from the jury panel.

The record indicates that Juror Terry responded affirmatively when trial counsel asked if any of the prospective jurors knew the defendant. No further questions were asked. There is no indication that Juror Terry intentionally concealed the nature of his prior relationship with the defendant. In consequence, the post-verdict challenge to Juror Terry's qualification would not have warranted relief. See Durham, 182 Tenn. at 582, 188 S.W.2d at 557; Akins, 867 S.W.2d at 355. Further, there is no indication that Juror Terry's participation in the verdict was influenced by his prior knowledge of the defendant's criminal history. Thus, the defendant is not entitled to relief on this ground.

Next, the defendant contends that he was denied the right to a trial by a fair and impartial jury because the jury was permitted to separate after they had been impaneled and sworn. Citing Gonzales v. State, 593 S.W.2d 288 (1990), he argues that prejudice is presumed, and that the burden is on the state to show that no prejudice occurred. The state submits that the defendant is not entitled to relief because he has not shown that he was prejudiced by the separation.

The rulings in Gonzales and its progeny are based upon Tennessee Code Annotated section 40-18-116:

> In all criminal prosecutions except those in which a death sentence may be rendered, the judge of the criminal court may, in his discretion, with the consent of the defendant, and with the consent of the district attorney general, permit the jurors to separate at times when they are not engaged upon the actual trial or deliberation of the case.

Tenn. Code Ann. § 40-18-116 (1990). In 1995, however, our legislature amended section 40-18-116 to read as follows:

> In all criminal prosecutions, except those in which a death sentence may be rendered, jurors shall only be sequestered on the judge's motion or on the motion of the counsel for the defendant or the district attorney general, which shall prohibit the jurors from separating at times when they are not engaged upon the actual trial or

deliberation of the case. The party making the motion to sequester shall be unknown to the jury.

Tenn. Code Ann. § 40-18-116 (1997) (emphasis added). This court has held that the amendment "does not per se alter a defendant's right to have the jury sequestered, [but] clearly rearranges the burden of putting forward an objection." State v. Johnny Owens and Sarah Owens, No. W2001-01397-CCA-R3-CD (Tenn. Crim. App., at Jackson, Nov. 8, 2002); see Kenneth MacArthur Johnson v. State, No. E2001-00068-CCA-R3-PC (Tenn. Crim. App., at Knoxville, Dec. 18, 2001) (1995 statute "reflects a right to a sequestered jury," but right may be "waived by the defendant who fails to move for sequestration").

In this case, neither the state nor the defense made a motion to sequester the jury. The trial court chose not to sequester the jury. Our supreme court has held that when the jury is not sequestered, the defendant has the burden of showing something more than mere interactions between the jury and third persons. Blackwell, 664 S.W.2d at 689. The defendant must instead establish "that as the result of a juror's contact with a third person some extraneous prejudicial information, fact or opinion was imported to one or more jurors or some outside improper influence was brought to bear on one or more jurors." Id. Here, the defendant has failed to make a threshold showing that any of the jurors interacted with a third person. In consequence, he would not be entitled to relief.

As his final issue, the defendant contends that his trial counsel was ineffective for failing to discover Juror Terry's knowledge of his criminal history, for failing to adequately investigate the case, and for failing to devote the necessary time and effort to the case. The state submits that trial counsel's performance was not deficient.

Our supreme court has stated that claims of ineffective assistance of counsel may be raised on direct appeal, and this court must apply the same standard used for such claims in post-conviction proceedings. See State v. Burns, 6 S.W.3d 453, 461 n.5 (Tenn. 1999). When a defendant seeks relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the defendant fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a [defendant] must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the defendant is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). The defendant bears the burden of proving his claims by clear and convincing evidence. See Burns, 6 S.W.3d at 461 n.5; State v. William Makransky, No. E2000-00048-CCA-R3-CD (Tenn. Crim. App., at Knoxville, June 28, 2001); see also Tenn. Code Ann. § 40-30-210(f) (1997).

On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the defendant to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990); Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

The defendant first claims that trial counsel was ineffective for failing to discover that Juror Terry, while working as a deputy sheriff, had arrested him on a prior charge. The defendant testified at the hearing on the motion for new trial that he informed trial counsel of the nature of his acquaintance with Juror Terry. Trial counsel testified that he knew that Juror Terry had been a deputy under a prior sheriff and did not have a favorable opinion of the current sheriff, having been critical of the investigative abilities of the department. Trial counsel chose to not to challenge the juror because he believed that his participation would benefit the defendant. In our view, this qualifies as a tactical decision and would not be a basis for relief.

The defendant's claims that trial counsel was ineffective for failing to adequately investigate and for failing to devote sufficient time and effort to the case are essentially based upon the failure to interview certain witnesses. The defendant argues that trial counsel should have interviewed the physician who treated the victim in the emergency room and two other persons who were at the Chambers residence shortly before the rape. None of these witnesses, however, were produced as witnesses at the hearing on the motion for new trial. Trial counsel explained at the hearing that he had read the medical report prior to the trial and did not feel that it was necessary to personally interview the physician. Further, trial counsel had learned from the defendant and his children that the other potential witnesses had left the Chambers residence well before the rape occurred and did not have any pertinent information. The defendant claimed only that the witnesses would have testified that the victim had been drinking on the evening of the offense. In our view, that would not have been enough to prove that trial counsel's performance was deficient.

In summary, because the defendant's untimely motion for new trial was a nullity, it did not toll the thirty-day period for filing a notice of appeal. Further, because the defendant has not raised any issue that would require dismissal, the interests of justice do not require the waiver of the timely filing of the notice of appeal. Accordingly, the appeal is dismissed. Finally, even if the defendant had been entitled to a review on the merits, the questions presented for review would not have warranted a new trial.

_____
GARY R. WADE, PRESIDING JUDGE